**James Paul PACE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–97–00178–CR.

Court of Appeals of Texas,
El Paso.

Jan. 28, 1999.

Rehearing Overruled Feb. 24, 1999.

---

David P. Zavoda, Odessa, for appellant.

John W. Smith, Dist. Atty., J. Roderick Price, Deputy Dist. Atty., Odessak, for state.

Before BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

SUSAN LARSEN, Justice.

James Paul Pace appeals his convictions for two counts of aggravated sexual assault. After a jury trial, he was found guilty and sentenced to fifty years incarceration with a $10,000 fine for each count.

## FACTS

On October 16, 1996, K.H.P., a Cellular One major account manager, attended the Oil Show in Odessa, Texas. After the Oil Show, K.H.P. drove to the Holiday Inn Center in Odessa to attend a business meeting with other Cellular One managers. Later that evening, she went to a hospitality party sponsored by Cellular One in the same Holiday Inn Center. Following the hospitality party, K.H.P. and other Cellular One employees proceeded to a local bar, the New Brewery. At approximately 11:45 p.m., another Cellular One employee drove K.H.P. back to her car.

While attempting to open her car, K.H.P. was hit in the back and grabbed by the neck. She struggled and screamed for help, but was unable to free herself. She was thrown to the ground and her assailant beat her head on the cement curb. Her assailant repeatedly threatened to kill her if she did not do what he said. Every time she tried to look at him, he would hit her with his fist.

He forced her to perform oral sex, then digitally penetrated her anus. Although he had difficulty achieving an erection, he penetrated her vaginally. K.H.P. blacked out. When she regained consciousness, she managed to crawl back to the Holiday Inn Center where some people found and assisted her.

As a result of the attack, K.H.P. underwent several operations on her eyes. Her injuries to her eyes, nose, and face required insertion of a metal plate into her face. She requires more surgery in the future to correct double vision. At trial, Dr. Gary Elam, one of the emergency room physicians who treated K.H.P., testified that the injuries were life threatening and that she could have died of the injuries.

Following the attack, Odessa police officers responded. Almost immediately after arriving, an officer spotted a large white male, wearing a white and blue or black striped shirt, fleeing the area. The officer radioed other officers in the area to set up a perimeter. Appellant James Pace was later apprehended by Officers Harvey Enriquez and Keith Carpenter. Officer Enriquez noticed that the appellant's pants were covered in blood.

Pace then participated in a "showup," which is a police procedure where the actual victim of a crime or other witness is brought to a location to look at a suspect to see if the victim or witness can identify the suspect. Pace was removed from the police squad car, uncuffed, and placed between several police officers. E.R., a woman who had been the victim of another attempted sexual assault earlier that evening, identified Pace as her assailant. Pace was advised that he was being arrested for sexual assault. He made two statements while in custody.

*Admissibility of the In–Court Identification*

In his first point of error, Pace contends that the trial court erred in denying his motion to suppress the in-court identification of the appellant by E.R. because it was tainted by an impermissibly suggestive out-of-court identification procedure conducted by the Odessa Police Department.

■■■ The trial court is the sole finder of fact in a motion to suppress hearing.[1] The trial judge is free to believe or disbelieve any or all of the evidence presented.[2] The courts of appeals review a trial court's ruling on a motion to suppress evidence according to the abuse of discretion standard.[3] The courts of appeals will not overturn a trial court's ruling if it is supported by the record.[4] More specifically, the in-court identification will be admissible and the trial court's ruling effectively upheld if the indicia of reliability outweigh the apparent corrupting effect of any unnecessarily suggestive pretrial occurrence.[5]

■■■ A two-step analysis is used to determine the admissibility of an in-court identification.[6] First, we examine whether the identification procedure was impermissibly suggestive.[7] Second, if we conclude the identification was the result of a suggestive procedure, we determine whether or not it gives rise to the substantial likelihood of irreparable misidentification,[8] examining the totality of the circumstances.[9] It is the defendant's burden to show by clear and convincing evidence that the in-court identification is unreliable.[10][11]

■■■ Unnecessarily suggestive identification procedures can violate an accused person's right to a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution.[12] An identification that results from the police presenting the victim with only one suspect, implying that the individual is the culprit, and then asking the victim to identify the criminal, is dubious because of its suggestiveness.[13] Under certain circumstances, however, such an identification, termed a "one man showup," may be permissible.[14] Although showups are problematic, in-court identifications following a showup are not per se violations of due process.[15] Rather, the independent reliability of

1. *Arnold v. State*, 873 S.W.2d 27, 34 (Tex.Crim. App.1993); *Hill v. State*, 902 S.W.2d 57, 59 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd).

2. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.App.1990).

3. *Long v. State*, 823 S.W.2d 259, 277 (Tex.Crim. App.1991).

4. *Hill*, 902 S.W.2d at 59.

5. *Delk v. State*, 855 S.W.2d 700, 706 (Tex.Crim. App.1993).

6. *Id.*

7. *Id.*

8. *Id.*

9. *Id.*

10. *Id.*

11. Appellant's counsel correctly points out that cases from this court have been inconsistent in assigning the burden of proof in this area. *Belton v. State*, 900 S.W.2d 886, 896 (Tex.App.—El Paso 1995, pet. ref'd) ("Unless the *defendant* can show, by clear and convincing evidence, that a complaining witness's in-court identification of

defendant as the assailant was tainted by improper pretrial identification procedures, the in-court identification will be admissible." (emphasis added)); *but see Guerrero v. State*, 838 S.W.2d 929, 931 (Tex.App.—El Paso 1992, no pet.) ("any subsequent in-court identification is not admissible unless the *prosecution* shows by clear and convincing evidence that the in-court identification is not tainted by the improper pretrial procedure and is of independent origin" (emphasis added)). *Delk* makes it clear that the burden is on the defendant to prove the in-court identification is tainted. Our language to the contrary in *Guerrero* has therefore been overruled by the Court of Criminal Appeals and *Belton* is now the law.

12. *Manson v. Brathwaite*, 432 U.S. 98, 113, 97 S.Ct. 2243, 2252, 53 L.Ed.2d 140, 153 (1977); *Woodard v. State*, 931 S.W.2d 747, 750 (Tex. App.—Waco 1996, no pet.).

13. *Navarette v. State*, 875 S.W.2d 452, 454 (Tex. App.—Corpus Christi 1994, no pet.).

14. *Id.* (internal citations omitted).

15. *Id.* (internal citations omitted); *see also Holder v. State*, 837 S.W.2d 802, 804 (Tex.App.—Austin 1992, pet. ref'd).

an in-court identification will be determined by a totality of the circumstances test.[16] Our analysis includes the following factors in determining the independent reliability of the identification: (1) the witness's opportunity to view the accused at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated at the pretrial confrontation; and (5) the time between the crime and the confrontation.[17] These and other relevant factors are weighed against the corrupting effect of the unduly suggestive identification.[18]

In this case, the in-court identification was made by E.R., a victim of an earlier attempted sexual assault the same evening as the assault on K.H.P. The witness testified that during the attempted sexual assault, she saw her attacker and remembered his face. She described him to the police as 5'1", 210 pounds, blond hair, wearing a blue pullover shirt. The police took E.R. to a "showup" on the morning of October 17, 1996, approximately three hours after the attack upon her. At the showup, E.R. started shaking noticeably and said, "Yes, that's him, that's him, that's him." At trial, over defense counsel's objections, she identified Pace as her attacker.

▉▉▉ Initially, we find that this one-man showup was impermissibly suggestive. We therefore must consider the factors previously outlined in determining whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. First, we note that the witness was able to see her attacker several times and remember his face. She testified that she was not on medication, had not been drinking, her mind was clear, and she was thinking clearly. Although she had not accurately described Pace's height or hair color in her earlier description, she was definitive in her identifi-

cation at the showup. Finally, the elapsed time from the incident to the showup was reasonable. Based on the totality of the circumstances, we find that her in-court identification was admissible and the trial court did not abuse its discretion because the indicia of reliability outweigh the apparent corrupting effect of any unnecessarily suggestive pretrial occurrence. Appellant's first point of error is overruled.

### Improper Jury Argument

In Point of Error Two, Pace asserts that the trial court erred by not granting his motion for mistrial following improper jury argument by the prosecutor. The argument complained of was:

When I go home tonight and I go to bed, I know in my heart that James Paul Pace is not raping anyone, and if you do what I am asking you to do, 20 or 30 years from now when I lay my head down to sleep, I can say to myself, James Paul Pace isn't raping anybody because he is where he belongs. He committed a horrible, vicious crime, as bad as any I have ever seen—

Immediately, appellant's counsel objected to this as outside the record and injecting the prosecutor's opinions before the jury. The trial court sustained the objection, instructed the jury to disregard the argument, but overruled appellant's motion for mistrial.

▉▉▉ Improper jury argument constitutes reversible error only if, "in the light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute or injects new facts, harmful to the accused, into the trial."[19] Generally, a prosecutor may not give his personal opinion on an issue in the case, because the jurors may infer that the prosecutor's opinion was based on outside information not available to the jury.[20] The prosecutor's argument here fell within this rule, and

16. *Woodard*, 931 S.W.2d at 750.

17. *Manson*, 432 U.S. at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154; *Delk*, 855 S.W.2d at 706.

18. *Delk*, 855 S.W.2d at 706.

19. *Bui v. State*, 964 S.W.2d 335, 345 (Tex.App.— Texarkana 1998, pet. ref'd) (citing *Felder v. State*, 848 S.W.2d 85, 95 (Tex.Crim.App.1992)); *Castil-*

*lo v. State*, 939 S.W.2d 754, 761 (Tex.App.— Houston [14th Dist.] 1997, pet. ref'd).

20. *Bui*, 964 S.W.2d at 345; *Wyatt v. State*, 566 S.W.2d 597, 604 (Tex.Crim.App. [Panel Op.] 1978).

the trial court correctly ruled it was improper.

 An instruction to disregard improper jury argument generally is sufficient to cure improper argument error, however.[21] A mistrial is necessary only where the jury argument is manifestly improper or so extreme that an instruction to disregard will not work to cure the error.[22] Where the prosecutor argues outside of the record and injects personal opinion, an instruction to disregard will cure error unless the argument "is clearly calculated to inflame the minds of the jurors and is of such character as to suggest the impossibility of withdrawing the impression produced on the juror's [sic] minds."[23] Other cases addressing similar complaints in which the prosecutor implied the case being tried was one of the worst cases in which he had ever been involved have held that the instruction to disregard rendered the error harmless.[24] We agree with this reasoning, and we therefore hold that the improper jury argument was cured by the instruction to disregard. The trial court did not abuse its discretion in denying Pace's motion for a mistrial. Appellant's second point of error is overruled.

### Charged Definition of "Intentionally" and "Knowingly"

 In his third and fourth points of error, Pace maintains that the trial court erred in failing to limit the definitions of "intentionally" and "knowingly" in the court's charge because the charge, as given to the jury, authorized the jury to find the appellant guilty not only as to the result of his conduct, but also as to the nature of his conduct. Error occurs when the charge permits the jury, by applying broad definitions, to convict a defendant of a "result-oriented" offense

without finding that he intended the result of his conduct.[25] We find that whether aggravated sexual assault is classified as a "result-oriented" offense, or a "nature of conduct" offense, the possibility that the jury improperly applied the statutory definitions does not exist in the present case. Here, the application portion of the charge required the jury:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 17th day of October, 1996, in Ector County, Texas, the Defendant, JAMES PAUL PACE, did then and there, intentionally or knowingly, cause the penetration of the female sexual organ of K.H., by Defendant's penis, without the consent of K.H., by compelling K.H. to submit or participate by the use of physical force or violence or by threatening to use force or violence against K.H., and K.H. believed that the Defendant had the present ability to execute said threat, and the Defendant caused serious bodily injury to or attempted to cause the death of K.H. by striking her head against a concrete surface, in the course of the same criminal episode, then you will find the Defendant guilty of Aggravated Sexual Assault as charged in Count 2 of the Indictment.

In *Hughes v. State*,[26] the Court of Criminal Appeals noted that although the definitions of "intentionally" and "knowingly" set forth three alternative elements of conduct, when viewed in their factual context it was apparent which conduct element applied to the offense.[27] The court concluded:

[B]ecause the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definitions of culpable mental states. . . . [28]

**21.** *Davis v. State*, 894 S.W.2d 471, 474–75 (Tex. App.—Fort Worth 1995, no pet.).

**22.** *Id.*

**23.** *Id.* at 475.

**24.** *Davis*, 894 S.W.2d at 474.

**25.** *Torres v. State*, 807 S.W.2d 884, 886 (Tex. App.—Corpus Christi 1991, pet. ref'd).

**26.** 897 S.W.2d 285, 296 (Tex.Crim.App.1994), *cert. denied*, 514 U.S. 1112, 115 S.Ct. 1967, 131 L.Ed.2d 857 (1995).

**27.** *Id.*

**28.** *Id.; see also Patrick v. State*, 906 S.W.2d 481, 491–93 (Tex.Crim.App.1995); *Ramirez v. State*, 976 S.W.2d 219, 223 (Tex.App.—El Paso 1998, pet. ref'd).

When the definitions are applied in context, the charge does not authorize the jury to convict appellant of the offense under a theory which is not authorized by the Penal Code.[29] The trial court did not err in charging the jury. Appellant's third and fourth points of error are overruled.

### Admissibility of Second Statement by Appellant

 In his sixth point of error, Pace contends that the trial court erred in admitting into evidence his second statement because it was not voluntarily given. The determination of whether a confession is voluntary under the Due Process Clause of the Fourteenth Amendment of the United States Constitution is based upon the examination of the totality of the circumstances surrounding its acquisition.[30] To meet constitutional standards, a confession must be both voluntary and taken in compliance with *Miranda*[31] and Article 38.22 of the Code of Criminal Procedure.[32] In addition to the statutory warnings, some other factors in determining whether the will of an accused has been overborne are: length of detention; incommunicado or prolonged interrogation; denying access to a family member; refusing a defendant's request to telephone a lawyer or family member; and physical brutality.[33]

 The statements given by Pace in the interview room of the Odessa Police Station were the result of a custodial interrogation, thereby implicating Pace's *Miranda* protections. Prior to the interview, Detective Shane Callendar advised Pace of his *Miranda* rights. Pace indicated that he understood his rights. He then agreed to give a statement. Detective Callendar did not threaten or coerce the statement, nor did he promise Pace anything for his statement. Similarly, Callendar did not deny Pace any basic necessities such as use of the restroom, food, or water. Pace then made his first written statement to the police.

Approximately fifteen minutes later, Detective Callendar took another statement from Pace after again reading the *Miranda* warnings. Both statements were introduced at trial.

Pace asserts that his failure to initial or sign that part of his second statement which waived his right to counsel indicates he did not intend to waive his rights. We do not agree. Where an individual makes two statements, but signs only one set of warnings, we employ a totality of the circumstances test, including the circumstances surrounding the interrogation, to determine if the statements were voluntary. Here, given the full waiver on the first statement, the short time between first and second statements, and the second reading of rights, we agree with the trial court's conclusion that the second statement was uncoerced and was made after a knowing waiver.[34] Consequent-

29. *Torres,* 807 S.W.2d at 886 (internal citations omitted); *see also Saldivar v. State,* 783 S.W.2d 265, 267–68 (Tex.App.—Corpus Christi 1989, no pet.). *But see Alvarado v. State,* 704 S.W.2d 36, 37–40 (Tex.Crim.App.1986).

30. *State v. Terrazas,* 970 S.W.2d 157, 162 (Tex. App.—El Paso 1998, pet. granted).

31. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Ashcraft v. State,* 934 S.W.2d 727, 737 (Tex.App.—Corpus Christi 1996, pet. ref'd).

32. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 2 (Vernon 1979); *Jones v. State,* 944 S.W.2d 642, 650 n. 11 (Tex.Crim.App.1996); *Rachuig v. State,* 972 S.W.2d 170, 176 (Tex.App.—Waco 1998, pet. filed).

33. *Terrazas,* 970 S.W.2d at 162.

34. *Ashcraft,* 934 S.W.2d at 738. The Corpus Christi Court of Appeals held:

Ashcraft made two different statements. In his first statement, he did not initial the right to counsel portion of the statement. In his second statement, he initialed all of the subparts. In *Jacobs,* [787 S.W.2d 397 (Tex.Crim. App.1990)] the court dismissed the argument that a failure to sign a waiver of a right is equivalent to invoking that right without expressly ruling on the issue. We find that appellant's failure to initial that part of the statement waiving his right to counsel creates a presumption that he did not waive his right and that he thereby invoked that right. A defendant's signing of the waiver and statement benefits the State and signifies that the defendant did indeed waive his rights. However, a review of the totality of the circumstances surrounding the interrogation reveals that the statement was uncoerced and that appellant had the requisite level of comprehen-

ly, we do not find that Pace's failure to initial the second statement precluded a finding that he voluntarily waived his right to counsel.

 Appellant argues further that he was intoxicated at the time he made his statement and, therefore, his confession could not be voluntary. Intoxication, while relevant, does not render a confession involuntary per se.[35] Instead, the question becomes whether the defendant's intoxication rendered him incapable of making an independent, informed decision to confess.[36] Appellant's evidence as to intoxication consists of the testimony of Detective Callendar that he knew Pace had been drinking. Yet, Detective Callendar also testified that appellant did not appear to him to be intoxicated. Appellant presented testimony from James Thomas, a criminalist with the Texas Department of Public Safety Crime Lab in Lubbock, Texas. Mr. Thomas testified that Pace's blood alcohol content at the time of his arrest would have to be .16. We do not find evidence that Pace's drinking rendered him incapable of making a voluntary decision to confess.[37] Based upon the examination of the totality of the circumstances surrounding its acquisition, we hold that the trial court did not err by overruling appellant's objection and admitting State's Exhibit 20 into evidence. Appellant's sixth point of error is overruled.

### Standards of Review for Legal and Factual Sufficiency of Evidence

In his remaining points of error, Pace challenges the legal and factual sufficiency of several findings by the jury. In determining the legal sufficiency of the evidence to support a criminal conviction, the question is whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[38] We do not resolve conflicts of fact or assign credibility to witnesses, as it was the function of the trier of fact to accept or reject any, part, or all of any witness's testimony.[39] Our duty, rather, is to determine only if the explicit and implicit findings of the trier of fact are rational by viewing all the evidence in a light most favorable to the verdict.[40] In doing so, we resolved any inconsistencies in the evidence in favor of the verdict.[41] The standard of review is the same for direct and circumstantial evidence cases.[42]

In reviewing factual sufficiency, we consider all of the evidence, but we do not view it in the light most favorable to the verdict.[43] We will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.[44] In conducting a factual sufficiency review, the reviewing court cannot substitute its conclusions for those of the jury.[45] It is not within the province of this court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony.[46] Where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclu-

sion to enable the trial court to properly conclude that appellant had waived his *Miranda* rights.
*Id.*

35. *Jones*, 944 S.W.2d at 650.

36. *Id.*

37. *Id.*

38. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 156–57 (Tex.Crim.App.1991); *Hernandez v. State*, 946 S.W.2d 108, 110–11 (Tex. App.—El Paso 1997, no pet.).

39. *Lucero v. State*, 915 S.W.2d 612, 614 (Tex. App.—El Paso 1996, pet. ref'd).

40. *Id.*

41. *Id.*

42. *Geesa*, 820 S.W.2d at 158–62.

43. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim.App.1996); *Levario v. State*, 964 S.W.2d 290, 295 (Tex.App.—El Paso 1997, no pet.).

44. *Levario*, 964 S.W.2d at 295.

45. *Id.*

46. *Id.*

sive.[47]

### *Legal and Factual Sufficiency of Evidence Regarding Penetration*

 In his seventh and eighth points of error, Pace claims there was insufficient evidence to support a conviction for sexual assault by means of vaginal penetration. In a prosecution for sexual assault, penetration may be proved by circumstantial evidence.[48] Proof of the slightest penetration is sufficient.[49] In this case, Pace admitted having sexual intercourse with K.H.P. in two separate written statements. Also in evidence was K.H.P.'s statement that, "he put it in my vagina (from the front)." After reviewing all the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. We also find that the jury's resolution of conflicts in the evidence is conclusive as to the factual sufficiency of the evidence. Appellant's seventh and eighth points of error are overruled.

### *Legal and Factual Sufficiency of Evidence Regarding Serious Bodily Injury*

 In his ninth and tenth points of error, Pace urges the evidence was insufficient to support the element of serious bodily injury. We note, however, that there is evidence in the record that K.H.P. was thrown to the ground and her assailant beat her head on the cement curb. Because of these and other blows, she lost consciousness. Evidence of a blow to the head hard enough to cause a loss of consciousness is sufficient for a jury to find a serious bodily injury.[50] Moreover, there was testimony from Doctor Elam that the injuries were life threatening and that K.H.P. could have died of the injuries. We hold that the evidence is sufficient, under both legal and factual sufficiency reviews, for the jury to find that Pace caused serious

bodily injury to or attempted to cause the death of K.H.P.[51] Appellant's Points of Error Nine and Ten are overruled.

### *Findings of Fact and Conclusions of Law*

In appellant's Point of Error Five, he claimed that the trial court erred by not filing findings of fact and conclusions of law. We agreed, and by earlier order abated the appeal until the trial court made the required findings. Those findings were filed prior to the submission of this case, and were before us when we considered the remaining points appellant raises. Point of Error Five is therefore moot, and we now overrule it.

### *CONCLUSION*

Having found no reversible error, we affirm the trial court's judgment.

**47.** *Id.*

**48.** *Nilsson v. State*, 477 S.W.2d 592, 595 (Tex. Crim.App.1972); *Everage v. State*, 848 S.W.2d 357, 359 (Tex.App.—Austin 1993, no pet.).

**49.** *Nilsson*, 477 S.W.2d at 595.

**50.** *See Richardson v. State*, 753 S.W.2d 759, 765–66 (Tex.App.—Dallas 1988, no pet.); *Spearman v. State*, 694 S.W.2d 216, 218 (Tex.App.—Houston [1st Dist.] 1985, no pet.); *Harrison v. State*, 686 S.W.2d 220, 221–22 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd).

**51.** *Bui*, 964 S.W.2d at 342.