**Keith Allan LUSTER, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–00–00382–CR.**

Court of Appeals of Texas,
Eastland.

Aug. 29, 2002.

Cora L. Moore, Moore & Moore, Mineral Wells, for appellant.

Tim Ford, Dist. Atty., Palo Pinto, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## OPINION

JIM R. WRIGHT, Justice.

The jury convicted Keith Allan Luster of the offense of burglary of a habitation with the intent to commit theft. Appellant pleaded true to both enhancement allegations, and the jury assessed his punishment at confinement for 50 years. We affirm.

Appellant presents four points of error on appeal. In the first two points, he challenges the legal sufficiency of the evidence. In the first point, he contends that the evidence is insufficient to prove that he entered a habitation with the intent to commit theft as defined in the Texas Penal Code. In order to determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jackson v. State*, 17 S.W.3d 664 (Tex.Cr.App.2000).

The record shows that the home of the complainant, Tracie Diane Walkup, was burglarized on July 9, 2000. The complainant and her family were in the process of moving out of the house that was burglarized and into another house that was about a quarter of a mile away. On the afternoon of the burglary, the complainant left her new house and went to the old house to feed her horses. She noticed a car "suspiciously parked" on the side of the road and got the license plate number. She passed the car and drove down the road about a mile to turn around. The car that she had noticed before had also turned around and was parked in a bar ditch alongside of the complainant's property. The driver was no longer in the car. The complainant waited there for about five minutes before driving to a neighbor's home to call the sheriff's department. She reported the license plate number of the "trespasser," whom she could only describe as a black male. She waited in the neighbor's driveway for about 15 minutes and then went on to her old house to feed the horses. She noticed that someone had broken into her home. The back door was wide open, and pieces of the door frame were on the floor. The complainant immediately went back to her neighbor's house and reported the incident to the sheriff's department. According to

the complainant, the break-in had just occurred because, even though it was extremely hot outside, the house was still cool and the air conditioner was still cycling.

The complainant testified that her home had been rummaged through and that her camera and a few other miscellaneous items were missing. At trial, the complainant identified her camera bag, her camera, and her flash as items that had been taken from her closet. These items were introduced into evidence as State's Exhibits Nos. 1, 2, and 3.

The complainant's neighbor, Mary Rippetoe, corroborated the complainant's testimony regarding her part in the events that transpired on the afternoon of the offense. Rippetoe testified that the complainant came to her house to get the phone number for the sheriff's office. Rippetoe was also concerned about the now-abandoned vehicle. When the complainant left to go to her house, Rippetoe moved her pickup to the front gate and parked so that she could keep an eye on the vehicle. Rippetoe testified that, after about ten minutes, someone walked up the road toward the car from the direction of the complainant's house. When she saw the person approaching, Rippetoe drove down the road and parked "close enough behind the car that [she] could see him." She described the man as a black male wearing dark trousers and a dark shirt with "short-cropped" black hair. He was carrying a small brown bag, which he tossed into his car. Rippetoe drove a little closer and asked the man to come over so she could talk to him. The man ignored her and drove off toward Mineral Wells. Later that evening, she identified appellant as the man she had seen. He was "wearing the same dark clothes." At trial, she also identified appellant as the man she had seen. Rippetoe identified the bag that the man was carrying as being "[a]bout like" State's Exhibit No. 1, the complainant's camera bag.

Deputy Bobby Walton testified that he responded to the burglary call, went into the complainant's home to investigate, and obtained information from the complainant and the witness. At the scene, he observed that the complainant's back door had been forced open and that a tennis shoe print was on the door. Deputy Walton took a picture of the shoe print. He also obtained a latent fingerprint from the door knob of the back door. Shortly after leaving the scene, he saw a vehicle matching the description that the witnesses had given him and bearing the same license plate number. Deputy Walton pulled in behind the vehicle and walked up to it. He noticed a camera in a brown camera bag lying on the front floorboard of the passenger's side of the car. Deputy Walton identified appellant as the driver of the vehicle. He testified that appellant was wearing black pants, a black shirt, and black tennis shoes. After appellant consented to a search of the vehicle, a camera case, a camera, and a flash were seized. Deputy Walton identified State's Exhibits Nos. 1, 2, and 3 as the items he had seized. Deputy Walton then took appellant back to the scene and asked Rippetoe if she could identify him. After requesting that appellant take off his cap, Rippetoe identified him as the man she had seen earlier. The tennis shoes that appellant was wearing at the time he was apprehended were also introduced into evidence. The print left on the complainant's back door was consistent with appellant's tennis shoes. Furthermore, the partial latent print taken from the underside of the complainant's door knob was consistent with the fingerprint from appellant's right index finger. However, the fingerprint identification was not positive because only four or five—

rather than eight—points of comparison matched exactly.

We hold that the evidence is sufficient to show that appellant entered the complainant's home with the intent to commit theft. The first point of error is overruled.

■ In the second point, appellant's legal sufficiency challenge is based on a variance between the proof and the charged offense. The indictment charged appellant with entering the habitation "with intent to commit the felony offense of theft." The jury was instructed to find appellant guilty if he entered the habitation "with intent to commit the felony of theft." A person commits the offense of burglary of a habitation if he enters a habitation without the consent of the owner and with the intent to commit "a felony, theft, or an assault." TEX. PENAL CODE ANN. § 30.02 (Vernon Supp.2002). Although the evidence does not show that appellant entered the house with the intent to commit felony theft as opposed to misdemeanor theft, we hold that the variance is not fatal.

■ Such a challenge to the sufficiency of the evidence shall be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex.Cr.App.2001); *Malik v. State*, 953 S.W.2d 234 (Tex.Cr.App.1997). In *Gollihar*, the court held that "a hypothetically correct charge need not incorporate allegations [from the indictment] that give rise to immaterial variances" and that, when faced with a challenge to the sufficiency of the evidence based upon a variance between the indictment and the proof, "only a 'material' variance will render the evidence insufficient." *Gollihar v. State, supra* at 256–57. The court in *Gollihar* also reaffirmed the fatal variance doctrine and adopted the following materiality test to determine whether a variance is fatal:

A variance between the wording of an indictment and the evidence presented at trial is fatal only if "it is material and prejudices [the defendant's] substantial rights." When reviewing such a variance, we must determine whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow him to prepare an adequate defense at trial, and whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime.

*Gollihar v. State, supra* at 257, (quoting *United States v. Sprick*, 233 F.3d 845, 853 (5th Cir.2000)).

In this case, although there is a variance between the charged offense and the proof at trial, the variance is not fatal because it does not meet the materiality test. The indictment was sufficient to inform appellant of the offense and to avoid the risk of double jeopardy. *See Fuller v. State*, 73 S.W.3d 250 (Tex.Cr.App.2002); *Gollihar v. State, supra*. There is no distinction between felony theft and misdemeanor theft as far as the offense of burglary is concerned. Section 30.02 provides that it is a second degree felony to enter a habitation with the intent to commit theft, regardless of whether the theft would be classified as a felony or a misdemeanor. Since the "felony" allegation was not material and was not supported by the evidence, the hypothetically correct jury charge for the case need not have included it. We hold that the evidence is sufficient to support appellant's conviction. The second point of error is overruled.

■ In the third point, appellant complains that his rights were violated by the pretrial identification procedure used in this case and by the in-court identification of appellant in this case. However, appel-

lant did not make any such objections in the trial court and, consequently, did not preserve this complaint for review. *Perry v. State,* 703 S.W.2d 668 (Tex.Cr.App. 1986). The third point of error is overruled.

■■ In his final point, appellant contends that he was denied the right to effective assistance of counsel at trial. Under this point, appellant argues that counsel was ineffective in the following ways: failing to file a motion to suppress the identification testimony, failing to object to the jury charge, failing to object to the introduction into evidence of the items allegedly stolen, failing to object to the fingerprint evidence, failing to object to evidence regarding the shoe print, failing to object to the jury argument in which the prosecutor misstated the identification testimony, failing to ask the witnesses about the other items allegedly stolen, failing to object to the jury argument in which the prosecutor stated that the jury could convict appellant solely on the inference drawn from his recent possession of the stolen property, and failing to file a motion to "formalize the first view" of appellant by the identification witness or a motion for new trial.

■ In order to determine whether appellant's trial counsel rendered ineffective assistance at trial, we must first determine whether appellant has shown that counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 988 S.W.2d 770 (Tex. Cr.App.1999); *Hernandez v. State,* 726 S.W.2d 53, 55 (Tex.Cr.App.1986). In assessing counsel's performance, we must make every effort to eliminate the distort-

ing effects of hindsight, to reconstruct the circumstances, and to evaluate the conduct from counsel's perspective at the time. We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance; and appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Stafford v. State,* 813 S.W.2d 503, 508–09 (Tex.Cr. App.1991). Appellant is not entitled to perfect or error-free counsel. Isolated instances of errors of omission or commission do not render counsel's performance ineffective. *McFarland v. State,* 845 S.W.2d 824 (Tex.Cr.App.1992), *cert. den'd,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993).

First, trial counsel was not ineffective for failing to object to the identification testimony, to the admission of the stolen items, or to the evidence regarding the fingerprint and shoe print. The failure to object to admissible evidence does not constitute ineffective assistance. *McFarland v. State, supra* at 846. Although appellant was subjected to a widely condemned "one man showup," Rippetoe's identification of appellant was admissible at trial. *See Pace v. State,* 986 S.W.2d 740, 744–45 (Tex. App.-El Paso 1999, pet'n ref'd), and the authorities cited therein. We note that the credibility of Rippetoe's identification testimony was attacked by trial counsel during cross-examination and jury argument. The camera and accessories were also admissible. The complainant testified that these items belonged to her and that they had been stolen from her house. Deputy Walton identified the items as the ones that he seized from the vehicle appellant was driving. The evidence regarding the latent fingerprint and the shoe print was also admissible. The prints were located at the scene of the crime. Testimo-

ny, though not definitive, indicated that the prints were consistent with appellant's fingerprint and shoe.

Furthermore, we cannot say that trial counsel was ineffective for failing to object to the jury charge or the State's jury argument. The jury charge contains no material errors. The prosecutor's jury argument was not improper under the standards set forth in *Cantu v. State*, 842 S.W.2d 667, 690 (Tex.Cr.App.1992), *cert. den'd*, 509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993). Contrary to appellant's assertion, the prosecutor did not inform the jury that it could infer appellant's guilt solely from his possession of recently stolen property.

■ Finally, we cannot determine from the record before us that trial counsel was ineffective in failing to question the witnesses regarding additional items that were allegedly stolen from the complainant's home; in failing to "formalize the first view" of appellant by Rippetoe; or in failing to file a motion for new trial which, according to appellant, "would have permitted the record to reflect many matters not currently appearing therein." We hold that appellant received reasonably effective assistance of counsel at trial. Appellant has not shown that trial counsel's performance fell below an objective standard of reasonableness. The fourth point of error is overruled.

The judgment of the trial court is affirmed.