Criminal Case Template



COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



JOSEPH KIRK NEWBROUGH,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§



§


§


§


§

No. 08-06-00117-CR


Appeal from the


County Court


of Andrews County, Texas


(TC# 05-0119)


O P I N I O N



 This is an appeal from a conviction for the misdemeanor offense of driving while intoxicated. 
Appellant pleaded guilty to the court, and the court assessed punishment at twelve months'
community supervision and a fine of $500. We reverse and remand for further proceedings.

I. SUMMARY OF THE EVIDENCE


 At the hearing on Appellant's motion to suppress the evidence, Dan Gomez testified that he
was a certified peace officer employed by the Andrews County Sheriff's Department. He had been
so employed for nine and one-half years. On February 12, 2005, he was patrolling in the early
morning hours. At about 1:30 a.m., Deputy Gomez was located on Northeast 2001 Road, which is
also called Taylor Road, approximately seven miles north of the town of Andrews. He was parked
on the side of the road, with his patrol vehicle heading north. A Ford SUV passed, traveling north. 
Deputy Gomez followed the vehicle for a mile. Nothing unusual occurred. Then the SUV, driven
by Appellant, came to the intersection of Northeast 2001 and Northeast County Road 5500
("Northeast 5500"), where Appellant turned west through a cattle guard onto a dirt road. Deputy
Gomez activated his overhead lights and stopped the vehicle. Appellant was the sole occupant.

 Deputy Gomez characterized Northeast 5500 as a private oil field road usually frequented
by oil field and ranch workers. The vehicles usually seen on the road were pickups of various types,
water-hauling trucks, or "gang-unit type trucks." Deputy Gomez stated that SUV-type vehicles were
not normally seen on that particular road. He was concerned about oil field theft and underage
drinking. He considered the presence of the vehicle unusual, given the time of the day. The deputy
testified that the road that Appellant turned onto comes to a tee intersection. If one were to go north
at the tee, he would come to an office behind an area called Florey Park. If he went south, he would
eventually come back to Taylor Road.

 On cross-examination, Deputy Gomez testified that it was his intention to detain Appellant
when the officer activated his overhead lights; he was not free to leave. Deputy Gomez stated that
the area at the intersection was not a high crime area, but he did watch out for oil-field thefts and
underage drinking. When asked if the county maintained the road onto which Appellant had turned,
the deputy replied that he did not know who maintained the road. He stated that he had no
information indicating that the SUV had been involved in a crime, and he did not observe any
criminal violation. Deputy Gomez testified that he was not aware that Appellant was illegally on
someone else's property. The time of day and the type of vehicle were the main reasons that the
deputy stopped Appellant's SUV.

 During a voir dire examination, Deputy Gomez testified that he thought an individual named
Bill Tom ran cattle on the land in the area. Over the years, Tom had mentioned that he had found
beer cans in the area and saw youths doing "doughnuts" on the property. He asked that people found
on the property be told to leave the property. Deputy Gomez estimated that this conversation had
occurred eight months prior to Appellant's detention. Deputy Gomez stated that there was no
indication that the Appellant posed any danger to anyone or that Appellant was in some sort of
distress. Appellant was subsequently convicted of driving while intoxicated.

II. DISCUSSION


 In Appellant's sole issue on appeal, he asserts that Deputy Gomez did not have a reasonable
suspicion in order to detain him in his vehicle. We review a motion to suppress evidence by both
abuse of discretion and de novo standards. Guzman v. State, 955 S.W.2d 85, 87-91 (Tex. Crim. App.
1997); Urquhart v. State, 128 S.W.3d 701, 704-05 (Tex. App.--El Paso 2003, pet. ref'd). Purely
factual questions, based upon evaluation of credibility and demeanor of witnesses, require
application of the abuse of discretion standard. Guzman, 955 S.W.2d at 89. Mixed questions of law
and fact which are not dependent on credibility or demeanor are reviewed de novo. Id. We review
the evidence in the light most favorable to the trial court's ruling. State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000). In a suppression hearing, the trial court is the sole finder of fact. Pace v.
State, 986 S.W.2d 740, 744 (Tex. App.--El Paso 1999, pet. ref'd). The trial judge may believe or
disbelieve any of the evidence presented. Id. The totality of circumstances are considered to
determine whether the trial court's findings are supported by the record. In re D.A.R., 73 S.W.3d
505, 509 (Tex. App.--El Paso 2002, no pet.) (citing Brewer v. State, 932 S.W.2d 161, 166 (Tex.
App.--El Paso 1996, no pet.)).

 Law enforcement officers may stop and briefly detain persons suspected of criminal activity
on less information than is constitutionally required for probable cause to arrest. Terry v. Ohio, 392
U.S. 1, 22, 88 S. Ct. 1868 (1968). Under the Fourth Amendment, a temporary detention is justified
when the detaining officer has specific articulable facts which, together with rational inferences from
those facts in light of the officer's experience and general knowledge, would lead a reasonable
officer to conclude that the person detained is, has been, or soon will be engaged in criminal activity. 
Id. at 21-22, 88 S. Ct. at 1880; Brother v. State, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005), cert.
denied, --- U.S. ----, 126 S. Ct. 1172 (2006); Kothe v. State, 152 S.W.3d 54, 63-64 (Tex. Crim. App.
2004). The officer must be able to articulate more than an "inchoate and unparticularized suspicion
or 'hunch' of criminal activity." Illinois v. Wardlow, 528 U.S. 119, 124, 120 S. Ct. 673, 676 (2000).
"Reasonableness," under Fourth Amendment standards, is a fact-specific inquiry measured in
objective terms by examining the totality of the circumstances. Kothe, 152 S.W.3d at 63.

 An officer's stop of an automobile constitutes a seizure, within the meaning of the Fourth
Amendment. Corbin v. State, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002); see also Delaware v.
Prouse, 440 U.S. 648, 653, 99 S. Ct. 1391, 1396 (1979); Garza v. State, 771 S.W.2d 549, 558 (Tex.
Crim. App. 1989). A seizure occurs when a driver pulls over in response to the officer's activation
of his overhead lights. Corbin, 85 S.W.3d at 276. To determine the reasonableness of an
investigative detention, we apply the Terry test: (1) Whether the officer's action was justified at its
inception, and (2) whether it was reasonably related in scope to the circumstances that justified the
initial interference. See Terry, 392 U.S. at 19-20, 88 S. Ct. at 1879; Davis v. State, 947 S.W.2d 240,
244 (Tex. Crim. App. 1997).

 In the instant case, we find that Deputy Gomez did not have specific, articulable facts which,
together with rational inferences from those facts in light of his experience and general knowledge,
would lead a reasonable officer to conclude that Appellant had been engaged, or was soon to engage,
in criminal activity.

 A lawful temporary detention must be based upon more than the suspicious location of a
vehicle or the time of day. Klare v. State, 76 S.W.3d 68, 75 (Tex. App.--Houston [14th Dist.] 2002,
pet. ref'd). While these factors are relevant to an analysis of reasonableness, the time of day and the
level of suspicious activity in a given area are facts which focus on the suspect's surroundings, rather
than on the suspect himself. Id. Courts generally require some additional fact(s) particular to the
suspect's behavior in order to justify a suspicion of criminal activity. Id. Here, Deputy Gomez could
not articulate any specific facts that related to Appellant's activities. The past indications of criminal
activity did not relate to any of Appellant's actions or movements. Furthermore, assuming arguendo
that Appellant was on someone else's property, there was no indication that he was trespassing or
otherwise engaging in criminal activity.

 Having found error, we must conduct a harm analysis to determine whether the error calls
for reversal of the judgment. Tex. R. App. P. 44.2. The harm analysis for the erroneous admission
of evidence obtained in violation of the Fourth Amendment is Rule 44.2(a)'s constitutional standard.
Hernandez v. State, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001). Accordingly, we must reverse the
trial court's judgment, unless we determine beyond a reasonable doubt that the error did not
contribute to Appellant's conviction or punishment. Tex. R. App. P. 44.2(a). The question is
whether the trial court's denial of Appellant's motion to suppress and its admission of the evidence
were harmless beyond a reasonable doubt. See Williams v. State, 958 S.W.2d 186, 194 (Tex. Crim.
App. 1997). In applying the "harmless error" test, we ask whether there is a "reasonable possibility"
that the error might have contributed to the conviction. Mosley v. State, 983 S.W.2d 249, 259 (Tex.
Crim. App. 1998), cert. denied, 526 U.S. 1070 (1999).

 After carefully reviewing the record and performing the required harm analysis under Rule
44.2(a), we are unable to determine beyond a reasonable doubt that the error did not contribute to
Appellant's conviction or punishment. See Williams, 958 S.W.2d at 195. The erroneous admission
of the evidence obtained after the temporary detention formed the basis for Appellant's conviction;
thus, Appellant was harmed by its admission. Accordingly, we sustain Appellant's sole issue.

III. CONCLUSION


 We reverse the judgment of the trial court and remand for further proceedings.


 KENNETH R. CARR, Justice


May 31, 2007


Before Chew, C.J., McClure, and Carr, JJ.


(Publish)