COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS






ERNEST VILLANUEVA,


 Appellant,


v.




THE STATE OF TEXAS,



 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 



No. 08-06-00208-CR
 


Appeal from the


83rd District Court 


of Pecos County, Texas 


(TC#2664) 



O P I N I O N


 Ernest Villanueva appeals his conviction for aggravated sexual assault of a child. He was 
convicted and sentenced by the jury to 50 years in the Institutional Division of the Texas
Department of Criminal Justice. He raises four issues on appeal: (1) requesting the appeal be
abated so that findings of facts and conclusions of law can be filed; (2) challenging the admission
of his confession at trial; (3) whether the confession's probative value outweighed its prejudicial
effect; and (4) the denial of his motion for mistrial.

 Ernest Villanueva was married to Rachel Rodriguez for eleven and a half years. Rachel
had two children from previous relationships, J.G. and John. Ernest and Rachel had one son
together, Ernie. 

 On June 8, 2005, J.G. gave her mother a letter. In the letter, J.G. wrote that Appellant has
touched her, and has made her touch his private. After reading the letter, Rachel went to speak
with her daughter, and asked her if it was true. J.G. said that, yes, it was true. Rachel went to
look for Appellant around the house, but could not find him. She then went and picked up her
son, Ernie, from his godmother's and returned home. When she returned home, she found
Appellant hiding behind a trash can. He approached Rachel saying that "he's a sick man."

 At some point, Appellant got a large kitchen knife. Appellant ran out the front door with
it, and locked himself in his truck. He said he was going to kill himself. When he ran out the
door, Rachel had her daughter call the police. While Appellant was locked in the truck, Rachel
got a golf club so that she could break the window to open the door, and stop him from killing
himself. Appellant unlocked the door before she broke the window. Appellant gave Rachel the
knife, got out of the truck, and went inside the house. Appellant went out the backdoor, and sat
down in the backyard. When the police arrived, Rachel took them to speak to him.

 The officers took him to the Fort Stockton Police Department. Appellant met with an
individual from the local mental health/mental retardation office, while at the police department. 
The record is silent about this meeting other than after speaking with the individual, Appellant
was "settled down." Appellant also met with Sergeant William Jackson of the Fort Stockton
Police Department. Sergeant Jackson gave Appellant his Miranda Warnings before taking the
statement. Appellant initialed each page, and initialed each right under Miranda. He did not
request an attorney. He was never handcuffed. This interview started at 9:20 p.m. and lasted
until 10:25 p.m. Afterwards, he left with his wife.

 In his statement, Appellant admits to having been told he is not under arrest, and he can
stop giving the statement at any time. Appellant also was informed of the range of punishment
for aggravated assault of a child and indecency with a child. The statement also says that he has
not been promised anything for giving his statement, nor has he been deprived of anything such
as food, water, sleep, or the use of a bathroom. He states that he is not taking any type of
medication, and is not under the influence of any type of drug or alcohol.

 Appellant first states that he was molested by his older brother as a child. He then
confesses that from age five until twelve, he would "make [J.G.] jack me off until I would
ejaculate." At the same time, he would touch her vagina by putting his hand underneath her
clothing. He stated that this would happen once or twice a week. Appellant also admitted to
laying on top of her with an erect penis while he and his daughter were both naked. Appellant
stated that he did not remember how many times this occurred, but that it was not more than five
times a year. He denies ever penetrating his daughter's vagina either with his finger or his penis. 
Appellant said these events would occur while his wife would be gone, and the other children
were asleep or outside playing. After giving his statement, Appellant left the police station.

 J.G. met with Lisa Tarango of the Fort Stockton Police Department on June 8, 2005 as
well. J.G. told her that Appellant "had stuck his private inside of her and it was hurting her so
badly." Officer Tarango testified that she was the first adult told about this one particular
incident. At the Harmony Home, a forensic interview was performed by Shawndee Kennedy. 
Ms. Kennedy stated that J.G. told her about an incident while her mother was in nursing school,
where Appellant had made her get on top and bounce up and down, while they were unclothed,
and his penis was inside her vagina. J.G. used the term "bunny" when describing the female
sexual organ and "private" when describing the male sexual organ. Officer Tarango said that
during her conversation with J.G., they did not get into the specific detail of her being made to
bounce. J.G. testified as to the incident that occurred while her mother was in nursing school as
well. J.G. stated that Ms. Kennedy was the first person she told about that particular incident. 
She said that the abuse started when she was five years' old, and while Appellant stopped putting
his "private" into her "bunny" when she started having her period, he continued to make her play
with his "private." She was also told by Appellant not to tell anyone about what was happening. 
Appellant would make her touch him if she wanted permission to do something such as go to a
friend's house, or else she would not be allowed.

 After a motion to sever, Appellant was tried only on count two of the indictment,
aggravated sexual assault of a child, and was convicted and sentenced by the jury to fifty years'
in prison.

 In his first issue, Appellant argues that the appeal should be abated until findings of facts
and conclusions of law on the voluntariness of his statement as required under the Code of
Criminal Procedure are filed. Tex.Code Crim.Proc.Ann. art. 38.22, § 6 (Vernon 2005). On
March 1, 2007, we abated Appellant's appeal, and directed the court to enter such findings of fact
and conclusions of law. The trial court filed written findings of fact and conclusions of law
regarding the voluntariness of Appellant's confession with this Court on May 2, 2007. 
Therefore, Appellant's first issue is moot.

 In Issue Two, he challenges the voluntariness of the statement given to Officer Jackson
and its admission at trial. We review the trial court's ruling on a motion to suppress for an abuse
of discretion. Guzman v. State, 955 S.W.2d 85, 88-9 (Tex.Crim.App. 1997). Under this standard
we give almost total deference to the trial court's determination of historical facts supported by
the record, especially when the findings are based on an evaluation of credibility and demeanor. 
Guzman, 955 S.W.2d at 89. We review de novo mixed questions of law and fact that do not turn
on an evaluation of credibility and demeanor. Id.; Balentine v. State, 71 S.W.3d 763, 768
(Tex.Crim.App. 2002). The trial court's ruling will be upheld if it is reasonably supported by the
record and is correct on any theory of law applicable to the case. State v. Ross, 32 S.W.3d 853,
855-56 (Tex.Crim.App. 2000). The voluntariness of a confession is determined by considering
the totality of the circumstances under which the statement was given. Creager v. State, 952
S.W.2d 852, 855 (Tex.Crim.App. 1997), citing Haynes v. Washington, 373 U.S. 503, 83 S.Ct.
1336, 10 L.Ed.2d 513 (1963). The ultimate question is whether the defendant's will was
overborne. Creager, 952 S.W.2d at 856, citing Armstrong v. State, 718 S.W.2d 686, 693
(Tex.Crim.App. 1985). In determining whether defendant's will was overborne, the court looks
at the length of detention, incommunicado or prolonged interrogation, denying access to a family
member, refusing defendant's request to telephone a lawyer or family member, and physical
brutality. Pace v. State, 986 S.W.2d 740, 747 (Tex.App.--El Paso 1999, pet. ref'd).

 Specifically, Appellant argues that as a result of his mental instability and law
enforcement's coercive actions, Appellant confessed to certain extraneous offenses, and the court
erred by admitting an involuntary statement that was taken in violation of his federal due process
rights. The trial court held a hearing on the admissibility of Appellant's statement. Sergeant
Jackson testified that he took a statement from Appellant on June 8, 2005 during late evening. 
He stated that Appellant had not been handcuffed or booked into jail. Appellant was in his office
giving the statement for maybe two hours. Appellant was not deprived of anything, nor
threatened by anyone while in his presence. He was also free to leave the entire time while
giving his statement. Sergeant Jackson typed the statement out while Appellant spoke. 
Appellant had an opportunity to review the statement and initialed every right under Miranda and
each page. Sergeant Jackson was aware that Appellant had threatened to commit suicide. He
denied ever mentioning probation to Appellant. He said Appellant was cooperative, calm, and
very talkative.

 Appellant also testified for the sole purpose of determining the admissibility of the
statement. The city police took him to the police department. He had threatened to cut himself
up. He voluntarily gave Sergeant Jackson a statement. Contrary to Sergeant Jackson, he said he
was told that he would probably get probation due to the voluntary statement. He spoke to an
individual about his attempted suicide before speaking with Sergeant Jackson. The individual
"got [him] settled down," and he was settled down when he was speaking with Sergeant Jackson. 
He was never handcuffed, was not arrested at any time, and the statements in his confession were
true.

 Article 38.22, section 2 of the Texas Code of Criminal Procedure governs the
admissibility of an accused's written statement. Tex.Code Crim.Proc.Ann. art. 38.22, § 2. If
the statement is a result of a custodial interrogation, it is inadmissible unless the accused receives
from the person to whom the statement is made and voluntarily waives the following rights:

 (1) he has the right to remain silent and not make any statement at all and that
any statement he makes may be used against him at his trial;


 (2) any statement he makes may be used as evidence against him in court;


 (3) he has the right to have a lawyer present to advise him prior to and during
any questioning;


 (4) if he is unable to employ a lawyer, he has the right to have a lawyer
appointed to advise him prior to and during any questioning; and


 (5) he has the right to terminate the interview at any time . . . .


See Tex.Code Crim.Proc.Ann. art. 38.22, § 2.

 The State argues that Appellant was not in custody and therefore, Article 38.22 does not
preclude the statement from being admissible. A statement that is the result of a noncustodial
interrogation is admissible at trial. Tex.Code Crim.Proc.Ann. art. 38.22, § 5. Appellant
asserts that under the totality of the circumstances given Appellant's suicide threats, the alleged
coercive actions by the police, and his mental state show that Appellant's will was overborne. 
However, the record shows otherwise. The trial court's Findings of Fact and Conclusions of Law
state that Appellant was given his Miranda Warnings and waived those warnings, that his
statement was freely and voluntarily given without duress, coercion, or improper influence, and
he was not in custody at the time of his statement. Even if Appellant was in custody, Sergeant
Jackson complied with Article 38.22, section 2 of the Texas Code of Criminal Procedure. The
required warnings were given to Appellant, and he waived them as evidenced by his initials
under each right and his signature at the end of the statement, which makes the statement
admissible at court. A suspect's mental deficiency alone is not determinative of the voluntariness
of the confession, but is only one factor to be considered. Colorado v. Connelly, 479 U.S. 157,
164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986). While Appellant did threaten to kill himself, he
testified at the hearing on the admissibility of the statement that he had "settled down" before
giving his statement, and remained "settled down" while giving his statement. Furthermore,
Appellant said he gave the statement voluntarily. Appellant has not shown a due process
violation occurred, and the record shows he voluntarily gave his statement. We find that the trial
court did not err in finding the statement was voluntarily made and admitting Appellant's
statement at trial. Issue Two is overruled.

 In Issue Three, Appellant contends the trial court erred in finding that the probative value
of Appellant's confession to certain extraneous offenses outweighed its prejudicial effect. Rule
404 (b) provides:

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character
of a person in order to show action in conformity therewith. It may, however, be
admissible for other purposes such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident,
provided that upon timely request by the accused in a criminal case, reasonable
notice is given in advance of trial of intent to introduce in the State's case-in-chief
such evidence other than that arising in the same transaction.


Tex.R.Evid. 404(b).


 Extraneous offenses are admissible under Article 38.37 of the Texas Code of Criminal
Procedure. Section 2 of Article 38.27 states:

 Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of
other crimes, wrongs, or acts committed by the defendant against the child who is
the victim of the alleged offense shall be admitted for its bearing on relevant
matters, including:


 (1) the state of mind of the defendant and the child; and


 (2) the previous and subsequent relationship between the defendant
and the child.


Tex.Code Crim.Proc.Ann. art. 38.37, § 2 (Vernon Supp. 2007).


 However, such acts may be excluded under Texas Rule of Evidence 403 if its "probative
value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless presentation of cumulative
evidence." Tex.R.Evid 403.

 Appellant presented a Motion In Limine requesting that the State refrain from directly,
indirectly, or through witness testimony commenting or alluding to all admissions of Appellant
regarding any crimes other than the crime for which Appellant was being tried. Appellant's
counsel did not reference any particular statute or rule on which he based his motion. The State
argued that Appellant's statement was admissible under Article 38.37, section 2 of the Code of
Criminal Procedure. The State while arguing the motion stated "the only objection to them,
really, is 403. . . . You know, the prejudicial impact versus the probative value." The State
continued to argue the admissibility of the extraneous offenses under Article 38.37 to show the
state of mind of J.G. and her relationship with Appellant, while only once mentioning the
probative value of the offenses, but did not discuss them in contrast to their prejudicial impact. 
Appellant's trial counsel did not argue that the prejudicial impact outweighs its probative value
after the statement.

 If it is apparent from the record that the trial court understood the objection and its
grounds, error is preserved. Dixon v. State, 928 S.W.2d 564, 564-65 (Tex.Crim.App. 1996). 
Whether the specific grounds for the objection were apparent from the context of the objection is
determined by looking at each situation individually as it arises. Heidelberg v. State, 144 S.W.3d
535, 538 (Tex.Crim.App. 2004). A Rule 403 objection is not implicitly contained in relevancy or
404(b) objections; rather a specific Rule 403 objection must be raised to preserve error. Lopez v.
State, 200 S.W.3d 246, 251 (Tex.App--Houston [14th Dist.] 2006, pet. ref'd). In this case,
Appellant did not make a specific 403 objection. There is no mention of the basis for his Motion
in Limine to exclude the admissions of extraneous offenses. Appellant did request and receive a
continuing objection as to each time the State brought up the evidence of Appellant's admissions
of extraneous offenses. However, there is no mention as to what the objection is based upon
other than the Appellant does not want the State "to throw our confession back into our faces
regarding all the extraneous offenses." There is also no evidence in the record that the trial judge
understood the grounds for the objection. Appellant, in his brief, also argues that the
presentation of the admission of extraneous offenses confused and misled the jury and only
presented cumulative evidence. Appellant also failed to object under these grounds. It is not
apparent from the context of the objections in the record that the trial court understood the
objections and its grounds. We hold Issue Three was not properly preserved for appeal.

 In Issue Four, Appellant argues that the court erred in denying his motion for mistrial
based on the State's misrepresentation and the resulting inadmissible hearsay testimony
introduced at trial. Appellant contends that Officer Tarango was the correct outcry witness and
not Shawndee Kennedy. 

 Article 38.072, § 2(a) reads as follows:

 This article applies only to statements that describe the alleged offense that:


 (1) were made by the child against whom the offense was allegedly
committed; and 


 (2) were made to the first person, 18 years of age or older, other than
the defendant, to whom the child made a statement about the
defense.


Tex.Code Crim.Proc.Ann. art. 38.072, § 2 (Vernon 2005).


 The statement describing the alleged offense must be "more than words which give a
general allusion that something in the area of child abuse was going on." Garcia v. State, 792
S.W.2d 88, 91 (Tex.Crim.App. 1990). The child's statement must describe the alleged offense
"in some discernible manner." Id. An outcry witness is not person-specific, but event-specific. 
There may be two proper outcry witnesses if they each testify about different events, but there
may be only one outcry witness if they only testify about one event. Broderick v. State, 35
S.W.3d 67, 73 (Tex.App.--Texarkana 2000, pet. ref'd). The proper outcry witness to a single
event is the first adult person other than the defendant to whom the victim made a statement
describing the incident. Id. at 73-4.

 In her report, Officer Tarango wrote that J.G. told her that Appellant had been touching
her since the age of five. She described how Appellant had undressed her while she was sleeping
in her room, and had stuck his private in her. She also told Officer Tarango about Appellant
making her touch him about once a week, and had sex with her until she started menstruating. 
Ms. Kennedy testified as to a specific event related to her by J.G., where she was forced to get on
top of Appellant and bounce up and down in her mother's room. There was evidence at trial of
more than one incident of abuse. Since an outcry witness is event-specific, we conclude that the
trial court did not abuse its discretion by denying the motion for mistrial based upon improper
outcry witness designation.

 However, even if the court erred in admitting the testimony of Ms. Kennedy as the outcry
witness, we must determine if the admission of improper evidence prejudiced Appellant. 
Nonconstitutional error is not reversible if it does not affect an Appellant's substantial rights. 
Tex.R.App.P. 44.2. Substantial rights are affected when the error has a substantial and injurious
effect or influence in determining the jury's verdict. King v. State, 953 S.W.2d 266, 271
(Tex.Crim.App. 1997). The admission of inadmissible hearsay is nonconstitutional error, and
will be considered harmless if, after examining the record as a whole, there is reasonable
assurance the error did not influence the jury verdict, or had but a slight effect. Johnson v. State,
967 S.W.2d 410, 417 (Tex.Crim.App. 1998). Improper admission of evidence is not reversible
error if the same or similar evidence is admitted without objection at another point in the trial. 
Dewberry v. State, 4 S.W.3d 735, 754 n.18 (Tex.Crim.App. 1999). In this case, J.G. testified to
the same events as Ms. Kennedy along with those in Officer Tarango's report. After examining
the record as a whole, there is reasonable assurance that the statements made by Ms. Kennedy did
not improperly influenced the jury since J.G. testified to the same events. Any error that may
have occurred was harmless. Issue Four is overruled.

 Having overruled all of Appellant's issues, we affirm the conviction.




June 26, 2008

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)