Affirmed and Memorandum Opinion filed January 11, 2005









Affirmed and Memorandum Opinion filed January 11,
2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01046-CR

 

______________________

 

ELIZABETH JANE
BURKE,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 177th
District Court

Harris County, Texas

Trial Court Cause No. 931,182

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Elizabeth Jane Burke, was
charged by indictment with both injury to a child and murder in the death of
her child, Ian Noel.  A jury found her
guilty of murder and assessed punishment at seventy-seven (77) years= confinement in
the Texas Department of
Criminal Justice, Institutional Division. 
In
eight points of error, appellant contends the trial court erred by: (1)
admitting unfavorable evidence; (2) forcing her to testify about the
credibility of a State=s witness; (3) excluding favorable
character evidence and rebuttal testimony; and (4) not granting her request for
a mistrial.  We affirm.








The record reflects that, on October 13,
2002, appellant and her boyfriend, Eddie Noel, got into an altercation where
appellant threatened to kill herself with a kitchen knife.  Despite the attempt to Aget his attention,@ Mr. Noel left and
did not return until the following day when appellant called to inform him that
their seven-week-old son, Ian, was not breathing.  The record further indicates that, upon
finding the child unconscious, appellant ran to a nearby mobile home owned by a
friend, Jennifer Nichols.  Another
neighbor, Melissa Kelly Edwards, heard appellant=s screams and saw
appellant toss Ian to Ms. Nichols. 
Immediately, Ms. Edwards and several others came to the child=s aide by starting
CPR and placing an emergency call to 9-1-1. 
Several Pasadena police officers and chief of the Pasadena Fire
Department responded to the call and arrived on the scene within a minute.  They took over the lifesaving efforts and
began transporting the child to Bayshore Hospital.  They rendezvoused with an ambulance and transferred
the child to paramedics for the remainder of the trip.  After all lifesaving efforts failed to revive
Ian, he was pronounced dead at the hospital.

The day after Ian=s death, appellant
went to thank Ms. Edwards for trying to save the child.  At that time, appellant admitted to Ms.
Edwards that she had put a blanket over the child=s face because she
was mad at the child=s father. 
Ms. Edwards disclosed this conversation to the Pasadena Police
Department and agreed to get appellant to repeat her story.  Two days later, Ms. Edwards drove appellant
to Dairy Queen where their conversation was monitored by Pasadena police
officers and recorded by a device inside Ms. Edwards=s truck.  Appellant again admitted that she had covered
Ian=s head with a
blanket and then had placed him face down on his pillow.  She claimed to do so to Aget back at@ Mr. Noel.  Subsequent medical examination indicated a
possible cause of Ian=s death was intentional suffocation.  After further investigation, appellant was
arrested and charged.








Admission
of State=s Evidence

In her first and
second points of error, appellant contends the trial court erred in admitting
testimony over her objection. 
Specifically, appellant contends the court should not have admitted
testimony from a State=s witness who explained that appellant=s reaction was
different from other mothers he has seen who learn that their child has been
seriously injured.  Appellant also
complains that she was forced to testify about whether or not the State=s Ajailhouse snitch@ was being
truthful and that such testimony is prohibited under Ayala v. State, 352
S.W.2d 955 (Tex. Crim. App. 1962). 
However, appellant failed to preserve error on either of these points.

A party is required to object each time
inadmissible evidence is introduced.  Martinez v. State, 98 S.W.3d 189, 193
(Tex. Crim. App.2003); Ethington v. State, 819 S.W.2d 854, 858 (Tex.
Crim. App.1991); see also Long v. State, 821 S.W.2d 216, 217 (Tex. App.CHouston [14th
Dist.] 1991, no pet.).  Failure to timely
object preserves nothing for review.  See
Tex. R. App. P. 33.1; Martinez,
98 S.W.3d at 193; Ethington, 819 S.W.2d at 858; see also Long,
821 S.W.2d at 217.  Furthermore, A[i]t is well
established that the improper admission of evidence does not constitute
reversible error if the same facts are shown by other evidence which is not
challenged.@  Leday
v. State, 983 S.W.3d 713, 717 (Tex. Crim. App. 1998) (quoting Crocker v.
State, 573 S.W.2d 190, 201 (Tex. Crim. App. 1978)).     








Here, the State called Officer Buckaloo to
testify at trial about appellant=s demeanor both at
her home and at the hospital during the tragic event.  Buckaloo explained that he expected appellant
to be hysterical but instead, she was calm and insincere, merely Apretending to cry.@  Appellant did not object to this
testimony.  Buckaloo was then asked to
compare appellant=s reaction to that of other mothers who
had been told their child was hurt or dead. 
Appellant objected to this question on relevancy grounds and the court
sustained the objection.  After the
prosecutor rephrased the question, however, the court overruled appellant=s subsequent
objection.  It is the answer to this
question which appellant now claims was improperly admitted.  

Later in the trial, the State elicited
similar testimony from other witnesses, to which defense counsel made no
objection.  Namely, Officer Dudley, the
first officer to arrive at appellant=s home, was
questioned by the State=s attorney regarding appellant=s demeanor.  Dudley, like Buckaloo, stated that he
expected to see a hysterical mother but instead, he saw Ano reaction@ from appellant.  More significantly, the State called Jerry
Gardner, chief of the Pasadena Fire Department, to testify about appellant=s demeanor.  He explained that appellant seemed Avery calm@ and Arather blasé.@  When the State=s attorney asked
if that was unusual, Gardner explained that it did seem unusual to him because,
in his experience with the fire department, people in similar situations are
typically Ahysterical, uncontrollable sometimes.@  No objections were made to either the
question or Gardner=s answer.       

Here, the State introduced opinion
testimony from several witnesses who directly observed appellant=s demeanor.[1]  Both Buckaloo and Gardner compared appellant=s reaction to the
typical reaction of mothers in similar, traumatic situations.  Appellant objected to Buckaloo=s testimony but
did not challenge Gardener=s testimony.  Because Gardener=s testimony
established the same facts, appellant cannot complain about the admission of
Buckaloo=s statement.  Appellant failed to preserve error, if
any.  See Leday, 983 S.W.2d at 717B18; Anderson v.
State, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986); see also Gonzales v.
State, No. 03-01-00524-CR, 2002 WL 1987616, at * 6 (Tex. App.CAustin Aug. 30,
2002, pet. ref=d) (not designated for publication)
(explaining that the defendant failed to preserve for review whether the trial
court improperly admitted expert testimony where similar testimony was admitted
through three other witnesses without objection).  Appellant=s first point of
error is overruled.








Appellant contends, in her second point of
error, that she was improperly forced to comment on the credibility of another
witness, the State=s Ajailhouse snitch,@ in violation of Ayala
v. State, 352 S.W.2d 955 (Tex. Crim. App. 1962).  However, she similarly failed to preserve
this point of error for review.

Just prior to trial, appellant shared a
holdover cell with another woman named Laura Mills.  While sharing the cell, appellant allegedly
talked at length with Ms. Mills about the case pending against her.  Claiming to be distraught over what appellant
told her, Ms. Mills asked to speak with the prosecutor in appellant=s case to convey
what appellant said.  At trial, the State
called Ms. Mills to testify about this conversation.  Ms. Mills took the stand and explained that
appellant said she had been charged with killing her baby and that she did not
know if she killed the child or whether a pillow or blanket was used to
possibly smother the baby.  Appellant
also allegedly said her husband was mad at her and was concerned that she was
trying to hide something because, after the child=s death, appellant
disposed of the baby=s blanket in a trash dumpster.[2]  Ms. Mills further stated that appellant was
laughing and smiling during the conversation, claiming the State had no case
against her.  At the close of Ms. Mills=s testimony, the
State rested.








Later in the trial, appellant took the
stand in her defense.  On
cross-examination, the State brought up Ms. Mills= testimony and
asked if appellant, in fact, had spoken with Ms. Mills.  Appellant said she did talk to Ms. Mills, but
claimed she did not talk about her case. 
She directly denied telling Ms. Mills anything about throwing an object
in the dumpster, to which the State=s attorney asked
appellant how Ms. Mills would have gotten that information.  Defense counsel objected, arguing that would
require speculation.  The court ruled
that appellant could answer the question if she knew.  Appellant continued to deny that she gave Ms.
Mills details about her case, to which the State=s attorney asked
if Ms. Mills had lied on the stand. 
Defense counsel again objected and the trial court again overruled the
objection.  However, appellant did not
directly answer the question, but rather, repeated her earlier denials that she
talked about her case.  

A similar exchange took place minutes
later and defense counsel again objected. 
Just as before, the trial court overruled the objection.  The State then asked appellant a series of
questions involving specific statements made by Ms. Mills while on the
stand.  Appellant continued to deny that
she spoke with Ms. Mills about the case. 
Again, the State=s attorney asked A[a]re you telling
this jury that [Ms. Mills] is lying?@  Finally, appellant said Ms. Mills would have
to be lying.  This time, defense counsel
did not object to either the question or the answer.

Because defense counsel did not object the
final time appellant was asked if Ms. Mills was lying, appellant failed to
preserve error on this point.  See
Martinez, 98 S.W.3d at 193; Ethington, 819 S.W.2d at 858; see
also Long, 821 S.W.2d at 217. 
Accordingly, appellant=s second point of
error is overruled.[3]

Exclusion of Defense Evidence








In points of error three and four,
appellant complains that the trial court improperly excluded evidence necessary
to her defense.  Specifically, appellant
argues the court erred in refusing to allow evidence or testimony about each of
the following: (1) her background living in foster homes as a teenager; (2) the
effect of parenting classes she took while in a substance abuse treatment
program; (3) appellant=s connection with her estranged husband
and her relationship with Eddie Noel, Ian=s father; and (4)
opinions from Mr. Noel and a neighbor regarding her parenting skills.  We will address each of these in turn.

Foster Homes

Appellant contends
the trial court should have allowed her to testify that she lived in foster
homes between the ages of thirteen and seventeen.  The State objected to this evidence as
irrelevant, and appellant argued the evidence was relevant to establish her
background and frame her as an individual who often uses defense mechanisms
when dealing with people.  Despite
appellant=s argument, the court refused to allow the
testimony, explaining that defense counsel needed to ask questions only dealing
with appellant=s adult life.  Appellant argues on appeal that the testimony
about her childhood was intended to rebut the State=s evidence that
she showed little to no emotion over her child=s death.  Appellant complains that the exclusion of her
testimony on this point precluded her from being personalized in front of the
jury and therefore, prejudiced her defense.

A trial court=s ruling on the
admissibility of evidence is reviewed under an abuse of discretion
standard.  See Montgomery v. State,
810 S.W.2d 37, 390 (Tex. Crim. App. 1990); Valdez v. State, 2 S.W.3d
518, 520 (Tex. App.CHouston [14th Dist.] 1999, pet. ref=d).  We will overturn the ruling only if it is so
clearly wrong that it lies outside the zone of reasonable disagreement.  Montgomery, 810 S.W.2d at 391;
Valdez, 2 S.W.3d at 520.  

While appellant=s childhood
experiences in foster homes may have been admissible as having some relevance
to her emotional development, it is equally plausible that this evidence had no
relevance at trial.  Because the
admissibility of this evidence falls within the zone of reasonable
disagreement, the trial court did not abuse its discretion in excluding the
evidence, and we refuse to overturn the court=s ruling.








Parenting Classes

Appellant also
argues that the trial court erred in excluding evidence about parenting classes
she took while in a drug abuse treatment program.  She contends this would have helped establish
that she is a good mother who would not harm her children.  She points out that a defendant is entitled
to introduce evidence of a pertinent character trait under Texas Rule of
Evidence 404(a)(1) and suggests this evidence went to her character.

Defense counsel began to ask appellant about her prior
offenses and why she was on probation. 
Appellant started to answer but the State objected Ain violation of
the Rule.@[4]  The following dialogue then took place at the
bench:

[Mr. Moncriffe]:  I don=t want to violate anything, but she, as a result of that
probation, was in SAFPE.  I think that=s relevant to some other things
that B this is her adult life I want to
talk about.  Was she current in SAFPE,
what it taught her and their discipline in raising her children.

[Mrs. Magness]:  Judge, that is punishment evidence.  That=s not evidence that is relevant to any element of this
indictment.

[The Court]:  You=re going to establish that she=s a drug user?

[Mr. Moncriffe]:  I=m trying to show you what the program did.

[The Court]:  We are not going to go into that.  If you start talking about SAFPE and B no.  No.








We first note the context in which the
subject of appellant=s parenting classes was raised.  Defense counsel was trying to introduce
testimony that appellant was placed in SAFPE, a substance abuse treatment
program.  The trial court refused to
allow this testimony to avoid a violation of Texas Rule of Evidence 404(b) and
to protect appellant from having negative evidence about her character, namely
that she was a drug-user, revealed by her attorney.  More important, we note the trial court did
not state that defense counsel could not ask about the parenting classes.  The court merely refused to allow counsel to
ask about appellant=s placement in SAFPE and it was counsel=s decision not to
make further inquiry about the classes.

Even were we to find that the trial court
did prohibit appellant from introducing testimony about her parenting classes,
we fail to see the relevance to any pertinent character trait at issue.  While appellant properly states that Texas Rule of Evidence
404(a) entitles a criminal defendant to introduce evidence of a pertinent
character trait, she fails to explain how a person=s mothering
prowess is a pertinent character trait in a murder trial.  See Valdez v. State, 2 S.W.3d 518, 520B521 (Tex. App.CHouston [14th
Dist.] 1999, pet. ref=d). 
In Valdez, this court explained A[i]n a murder
case, the accused=s reputation for peacefulness, or
non-aggressive behavior, is the appropriate inquiry.@ 2 S.W.2d at
520.  Were we to agree with appellant=s argument in this
case, we would have to believe the proposition that a character trait of Agood@ mothers, or
well-trained mothers, is that they are less likely to murder their children and
the converse character trait is true of Abad@ mothers or
mothers without training, i.e., they are more likely to murder their
children.  We fail to see how appellant=s parenting
classes are relevant to a pertinent character trait in her murder trial.  Regardless, we do not believe this evidence is
outside the bounds of reasonable disagreement and, as such, we do not believe
the trial court abused its discretion in excluding the evidence.  See Valdez, 2 S.W.3d at 520.

Marriage/Separation

Appellant next complains that the trial
court erred in excluding evidence about the separation from her husband and the
relationship with Eddie Noel, Ian=s father.  The record reflects the following colloquy:








Q.  
[By Mr. Moncriffe, defense counsel]: 
Did you B let=s talk now about  what happened with your marriage.  Did you separate from him and come to
Houston?  Explain to the jury how you B your connection, disconnection
with your husband.  You came here, and
you and Eddie hooked up again.  Tell the
jury about that.

A.  
[Appellant]:  I had got placed in
SAFPE and B 

[Mrs. Magness, the State=s attorney]: I object.

[The Court]:  Sustained.

Q.  
When you deal with Eddie, tell me what your relationship B merely with Eddie, how did you
establish your relationship with him when you came back here?

A.  
Well, I was in a halfway house.

[The Court]:  Approach.

(At the Bench)

[The Court]:  Are you trying to find out whether she got
divorced from that first husband?

[Mr. Moncriffe]:  I=m trying to show B yeah, I=m just trying to disconnect her.

[The Court]:  Why don=t you just ask her if she got divorced?

[Mrs. Magness]:  I have a question.  Are we still talking about when she was 18
years old, or are we ever going to talk about when she is 27 (her age at the
time of the offense)?  If this is an
attempt to place her in the community, it seems to me that it seems too remote.

[The Court]:  You better move on.

The record indicates that thereafter defense counsel
asked no more questions about appellant=s husband or how
she became involved with Eddie Noel. 
However, appellant argues on appeal that she was precluded from putting
forth this evidence.[5]








To preserve error in the exclusion of
evidence, the complaining party must actually offer the evidence or a summary
of the evidence and secure an adverse ruling from the court.  Tex.
R. Evid. 103(a)(2); Tex. R. App.
P. 33.1(a); Stewart v. State, 686 S.W.2d 118, 123 (Tex. Crim.
App. 1984) (en banc) (explaining that A[a]bsent a showing
of what [excluded] testimony would have been or an offer of a statement
concerning what the excluded evidence would show, nothing is presented for
review).  A[I]t is incumbent
upon the defendant to make an offer of proof to preserve any error in refusing
to admit the evidence.@  Canto-Deport
v. State, 751 S.W.2d 698, 700 (Tex. App.CHouston [1st
Dist.] 1988, pet. ref=d).

After being overruled as to the
admissibility of appellant=s placement in
SAFPE, appellant=s counsel did not ask any more questions
on the subject of appellant=s divorce or her
relationships with her husband and Mr. Noel. 
Appellant cannot complain she was not permitted to admit evidence she
never asked be introduced.  See
Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).  Furthermore, appellant did not make the
required offer of proof showing what the testimony would be or what the
excluded evidence would show.  As such,
she has presented nothing for review.  See
Lankston, 827 S.W.2d at 909; Stewart, 118 S.W.2d at 123. 

Opinion Testimony

Appellant also
contends the trial court erred by not allowing opinion testimony from Mr. Noel
and Jennifer Nichols, a friend and former neighbor.  Appellant claims Mr. Noel=s and Ms. Nichol=s opinions were
intended to help establish her character and that, as the defendant in a
criminal case, she was entitled to offer evidence of a pertinent character
trait under Texas Rule of Evidence 404(a).








At trial, appellant asked Mr. Noel a
series of questions about who took on the responsibility of planning for Ian
while appellant was pregnant.  When
defense counsel asked A[w]hat type of mother was [appellant] to
you,@ the State
objected to the question=s relevance.  The court sustained the objection and defense
counsel moved on with other questions about the care given to Ian.  Defense counsel did not attempt to reword the
question or seek another method to establish what Mr. Noel=s answer would
have been.

Later in the trial, Ms. Nichols was called
as another defense witness.  She
testified about her interaction with appellant and her personal knowledge of
what occurred on the days surrounding Ian=s death.  Defense counsel asked Ms. Nichols several
questions about the reaction of neighbors to Ian=s death and
eventually asked if she would Aever suspect that
[appellant] could have done something to her child?@  The court sustained an objection by the
State, and defense counsel moved on with other questions about the reactions of
neighbors and discussions that took place amongst them.  Again, defense counsel never returned to the
question now complained of and did not make any additional effort to establish
what Ms. Nichols= answer would be.

We again note that it is the defendant=s responsibility
to make an offer of proof to preserve error in refusing to admit evidence.  Tex.
R. Evid. 103(a)(2); Tex. R. App.
P. 33.1(a); Stewart, 686 S.W.2d at 123.  Here, defense counsel made no offer of proof
to establish what either Mr. Noel=s or Ms. Nichols= testimony would
be.  Therefore, appellant has
failed to preserve error.  See Garza
v. State, 846 S.W.2d 936, 939 (Tex. App.CHouston [1st
Dist.] 1993, pet. ref=d) (holding that where there was no offer
of proof and a witness=s answers are not apparent, no error is
preserved in excluding the testimony).

Appellant=s third and fourth
points of error are overruled.








Refusal
to Grant a Mistrial

In her fifth point
of error, appellant argues the trial court erred by refusing to grant her
request for a mistrial based on an allegedly improper question by the
State.  In her sixth point of error,
appellant contends the court erred by denying her the opportunity to rebut the
State=s allegedly
improper question.  

During direct examination, appellant
testified that she and her husband had separated and that there was a custody
issue involving their three children.  On
cross-examination, the State asked if the three children still lived with
appellant at the time of the offense. 
Defense counsel objected to the question=s relevancy, but
the court overruled the objection. 
Appellant answered the question by explaining that the three children
did not live with her.  The State then
asked, AThey had been
placed in custody of your mother?@  To this question, defense counsel asked to
approach the bench.  The court replied Asustained@[6] and, upon request,
instructed the jury to disregard the State=s question.  However, the court refused to grant defense
counsel=s request for a
mistrial.  

Denial of a motion for mistrial is reviewed
under the abuse of discretion standard.  Trevino
v. State, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999).  A mistrial is required only when Athe question is >clearly calculated
to inflame the minds of the jury and is of such a character as to suggest the
impossibility of withdrawing the impression produced on their minds.=@  Moore v. State, 882 S.W.2d 844, 847
(Tex. Crim. App. 1994) (quoting Gonzalez v. State, 685 S.W.2d 47, 49
(Tex. Crim. App. 1985)); Young Sun Lee v. State, 681 S.W.2d 656, 662
(Tex. App.CHouston [14th Dist.] 1984, pet. ref=d).  Asking an improper question will rarely
require a mistrial.  Moore, 882
S.W.2d at 847. Furthermore, an instruction to disregard will cure error
associated with an improper question and answer in most cases.  Ovalle v. State, 13 S.W.3d 774, 783
(Tex. Crim. App. 2000); Fuller v. State, 827 S.W.2d 919, 926 (Tex. Crim.
App. 1992).








Here, the court instructed the jury to
disregard the State=s question about appellant=s children being
placed in custody of her mother. 
Particularly where appellant first raised the issue of the custody of
her other three children and it was clear from appellant=s own testimony
that the children did not live with her, we cannot say the State=s question was
clearly calculated to inflame the minds of the jurors nor can we say that it
was of such a character as to suggest the impossibility of withdrawing the
impression produced on the jurors= minds. Therefore,
we hold the court=s instruction to disregard cured any error
and the trial court did not abuse its discretion in denying appellant=s motion for a
mistrial.  Appellant=s fifth point of
error is overruled.

After the court denied appellant=s request for a
mistrial, the State again asked if the children were living with appellant at
the time of the offense and if appellant had told a detective in the case that
they were living in Arkansas.  Appellant
again stated that the children were not living with her and further explained
that she had told the detective the children lived in Arkansas.

On redirect examination, in response to
the State=s questions about the children=s involvement in
appellant=s life, defense counsel asked appellant to
explain how she visited them, paid child support, supplied clothing, and
otherwise took responsibility for the children. 
Defense counsel then asked appellant to explain her statement that she Awas going to
Arkansas anyway.@ 
Appellant stated, AArkansas and Texas kind of was in limbo
about where the kids should go and where I should be.@  The State objected and, without ruling on the
objection, the court ordered the attorneys to approach the bench.  








At the bench, the court reminded defense
counsel that he had objected to the State=s question about
appellant losing custody of the children and that a curative instruction had
been given for the jury to disregard the question.  The State responded by stating that the
children had been removed by Children=s Protective
Services and warned that if defense counsel continued to open the door on the
issue of custody, the State would disclose to the jury that the children were
removed, due in part, to appellant=s negligent
supervision.  The court admonished
appellant, A[y]ou=d better not
start,@ but also
explained A[i]t is entirely up to you.@

It is not entirely clear what evidence
appellant complains was improperly excluded. 
In her brief, she points to the portion of the record where both the
court and the State suggested that defense counsel not delve into custody of
the three children.  However, we have no
way of knowing exactly what the testimony or evidence on this point would have
been.  Defense counsel did not ask any
further questions on the matter, but more important, failed to make the
required offer of proof showing what the testimony or evidence would have
established.  See Tex. R. Evid. 103(a)(2); Tex. R. App. P. 33.1(a); Stewart
v. State, 686 S.W.2d 118, 123 (Tex. Crim. App. 1984) (en banc).  Accordingly, we overrule appellant=s sixth point of
error.

Jury Argument

In appellant=s seventh point of
error she complains the trial court erred in not granting a mistrial based on
allegedly improper jury argument by the State. 
Appellant argues a mistrial was warranted because the prosecutor said  AI know@ appellant killed
her child. The record reflects that the following transpired at the close of
the guilt/innocence stage of trial:

[Mr. Moncriffe]:  You know something that is really funny to
me, too, if that tape says this, AI put a blanket
over Ian=s head,@ then why is the
State coming with 15 different B 14 different ways
of finding her guilty?  Why don=t you just take
that one B why don=t they just take
that statement by itself and say AThat=s enough to find
her guilty@? [sic] 
Why do they have to go with 14 ways of having it done?  Is it that they don=t believe the
statement, too?

The
State objected to this as improper argument and the court sustained the
objection.  Then, during her closing
argument, the prosecutor discussed the various possible causes of Ian=s death and
proceeded by stating:








[Mrs. Magness]:  Now that leaves us with intentional
suffocation.  Mr. Moncrifffe asked, Why
does the State indict in multiple ways? 
The State indicts in multiple ways because I wasn=t there.  I don=t know exactly how she killed him, but I know she did.

[The trial court sustained defense
counsel=s objection and instructed the jury
to disregard the prosecutor=s opinion but denied counsel=s request for a mistrial.]

[Mrs. Magness continued]:         I believe Mr. Moncriffe=s suggested to you that perhaps I
didn=t believe it.  Intentional suffocation, what does the
evidence show you?

The State continued with its closing argument by
reviewing and summarizing the evidence presented at trial.  Appellant contends on appeal that the
prosecutor=s interjection of her opinion was improper
jury argument and that the trial court erred by denying his mistrial request.

In response, the State argues that the contested
statement,  AI don=t know how she killed him, but I know
she did,@ was invited by defense counsel=s remarks and that it was a
reasonable deduction from the evidence. 
In support of this argument, the State explains that defense counsel suggested it must not
have believed that appellant smothered her child because why else would the
State allege fourteen different theories of guilt.  The State points out that defense counsel
even challenged whether the State believed appellant=s statement that she put a blanket
over the child=s head.  As such, the State claims its argument at
trial was an appropriate response.

Proper areas of jury argument include: (1) summation of the
evidence; ( 2) reasonable deductions from the evidence; (3) response to the
argument of opposing counsel; and (4) a plea for law enforcement.  Westbrook v. State, 29 S. W.3d 103,
115 (Tex. Crim. App. 2000).  In most
instances, it is improper for counsel to give his or her personal opinion on an
issue in the case, due to the danger that jurors could infer that the
prosecutor=s opinion is based on outside
information not available to the jury.  See Wyatt v. State 566 S.W.2d 597, 604
(Tex. Crim. App. 1978); Pace v. State, 986 S.W.2d 740, 745 (Tex. App.CEl Paso 1999, pet. ref=d).








Regardless of whether the State=s argument was improper in this case,
we find the trial court cured any error. 
When the prosecutor improperly interjects personal opinion into her jury
argument, an instruction to disregard will cure any error unless the argument
is clearly calculated to inflame the minds of the jury and is of such character
as to suggest the impossibility of withdrawing the impression produced on the
jurors=s minds.  Castillo v. State, 939 S.W.2d 754, 761
(Tex. App.CHouston [14th Dist.] 1997, pet. ref=d); 
Pace, 986 S.W.2d at 746; Davis v. State, 684 S.W.2d
201, 205 (Tex. App.CHouston [1st Dist.] 1984, pet. ref=d). 
Because the prosecutor, at least arguably, was responding to defense
counsel=s remarks,[7]
we cannot say that her comment was clearly calculated to inflame the juror=s minds.  Neither can we say that the comment left such
an impression on the jury that it warrants reversal of the conviction.  See Pace, 986 S.W.2d at 746; Davis,
684 S.W.2d at 205.  Accordingly, we
overrule appellant=s seventh point of error.      

Optional Completeness

In appellant=s final point of
error, she argues the trial court erred in refusing to admit testimony from a defense
witness about a written statement she provided to police.  Specifically, appellant claims that, because
the State questioned the witness about the statement, she was entitled under
Texas Rule of Evidence 107 to introduce the remainder of the written statement
to clarify or explain it.








While police were investigating Ian=s death, they
obtained a statement from appellant=s friend, Ms.
Nichols.  At trial, the State briefly
questioned Ms. Nichols on cross-examination about this statement.  Appellant then attempted, on redirect
examination, to ask additional questions about the statement.  Because the statement was hearsay and was not
admitted into evidence, the court explained that Ms. Nichols could answer the
questions only if they were based on her personal knowledge.  Furthermore, the court prohibited the witness
from reading directly from the statement.  Appellant proceeded to ask if the statement
was a summary of what she had told police but ended the questioning with no
further inquiry.  Appellant now complains
on appeal that she should have been entitled to introduce the entire statement
to rebut the State=s questions.

Under the rule of optional completeness, A[w]hen part of an
act, declaration, conversation, writing or recorded statement is given in
evidence by one party, the whole on the same subject may be inquired into by
the other, and any other act, declaration, writing or recorded statement which
is necessary to make it fully understood or to explain the same may also be
given in evidence, as when a letter is read, all letters on the same subject
between the same parties may be given.@  Tex.
R. Evid. 107.  This rule is
properly invoked where an opposing party reads part, but not all, of a
statement into evidence.  See Araiza
v. State,  929 S.W.2d 552, 555B56 (Tex. App.CSan Antonio 1996,
pet. ref=d); see also
Livingston v. State, 739 S.W.2d 311, 331B32 (Tex. Crim.
App. 1987).  In that situation, the
remainder of the statement Aon the same
subject@ is admissible to Areduce the
possibility of the fact finder receiving a false impression. . . .@ Roman v. State,
503 S.W.2d 252, 253 (Tex. Crim. App. 1974). 
However, mere reference to a statement and even a quotation from the
statement does not invoke the rule.  Jernigan
v. State, 589 S.W.2d 681, 694B95 (Tex. Crim.
App. 1979); Pinkney v. State, 848 S.W.2d 363, 367 (Tex. App.CHouston [1st
Dist.] 1993, no pet.).

Here, the State never sought to introduce
Ms. Nichols= statement into evidence nor did the State
directly read any portion of it to the jury. 
As such, Rule 107 was not properly invoked and the trial court did not
err in excluding the otherwise hearsay statement.  See Araiza,  929 S.W.2d at 555B56.








Even if the exclusion of the statement
were error, the error would be harmless because there was no Apossibility of the
fact finder receiving a false impression from hearing the evidence of only a
part@ of the
statement.  See Gilmore v. State,
744 S.W.2d 630, 631 (Tex. App.CDallas 1987, pet.
ref=d) (explaining the
purpose of the rule).  Here, the portion
of the statement asked about by the State did not produce a false impression
about the evidence.  Furthermore, after reviewing
the record as a whole, we find that there are Afair assurances@ that the error,
if any, did not influence the jury.  See
Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (explaining
that unless the error influenced the fact finder, it is harmless and does not
require reversal).  Appellant=s final point of
error is overruled.

The judgment of the trial court is
affirmed.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed January 11, 2005.

Panel consists of
Justices Anderson, Hudson, and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).











[1]  Opinion testimony about a person=s demeanor is generally admissible
if based on facts actually perceived by the witness.  Fairow v. State, 943 S.W.2d 895, 897B900 (Tex. Crim. App. 1997).





[2]  Appellant was
actually referring to her boyfriend, Mr. Noel.





[3]  In addition, appellant failed to
preserve this point of error because her complaint on appeal is different from
her objection at trial.  Appellant argues
on appeal that the answer to these questions required her to improperly comment
on the truthfulness of Ms. Mills=s testimony.  This
argument was never raised at trial. Rather, appellant argued at trial that this
evidence was irrelevant.  Therefore,
because appellant=s complaint on appeal varies from
her claim at trial, she failed to preserve error and presents nothing for our
review.  See Broxton v. State, 909
S.W.2d 912, 918 (Tex. Crim. App. 1995) (explaining that an objection at trial
stating one legal theory may not be used to support a different legal theory on
appeal); Coffey v. State, 796 S.W.2d 175, 179B80 (Tex. Crim. App. 1990); Rezac
v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990).





[4]  Appellant
notes in her appellate brief that no rule was specified by the State to support
its objection and that the objection came late. 
However, appellant does not explain the relevance of these contentions
to her appeal.  Regardless, a closer
reading of the record indicates the State was objecting to the testimony as
improper character evidence, noting that it was relevant for punishment
purposes but not at the guilt/innocence stage of the trial.





[5]  We note the
State=s objection and the court=s instruction to approach were in response to
appellant=s answers, not defense counsel=s questions.  It
is apparent the court was trying to preclude appellant from introducing
testimony about her placement in SAFPE. 
The court already had ruled that this evidence was inadmissible, likely
in an effort to protect appellant
from having negative evidence about her character, namely that she was a
drug-user, admitted against her.  See discussion supra AParenting Classes.@  Therefore, when appellant started to answer her attorney=s questions with information about
SAFPE, the court refused to allow those
answers.  However, nothing suggests the
court refused to allow further testimony on the subject of appellant=s relationships.





[6]  This statement
was likely in response to what the court believed was a forthcoming objection.





[7]  Certainly,
standing alone the prosecutor=s comment would be improper.  See Clayton v. State, 502  S.W.2d 755, 756 (Tex. Crim. App. 1973);
Campos v. State, 946 S.W.2d 414, 415B16 (Tex.
App.CHouston [14th Dist.] 1997, no pet.). However, it does
appear the comment in this particular case was invited by defense counsel=s prior remarks. 
See Lewis v. State, 676 S.W.2d 136, 142B43 (Tex. Crim. App.1984); Bui v. State, 964
S.W.2d 335, 345B46 (Tex. App.CTexarkana
1998, pet. ref=d).