NO. 07-11-00085-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

SEPTEMBER 6, 2012

---

CESAR DAN HERNANDEZ-SANDOVAL, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

---

FROM THE 291ST DISTRICT COURT OF DALLAS COUNTY;

NO. F-0954675-U; HONORABLE SUSAN LYNN HAWK, JUDGE

---

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Cesar Dan Hernandez-Sandoval, appeals from his conviction for murder[1] for which the jury assessed punishment at life in prison. On appeal, he challenges the trial court's denial of his motion to suppress his oral and written statements, its denial of his motion for mistrial based on a juror's nondisclosure of material information, its *in camera* hearing held on the matter in appellant's absence, and its admission of gruesome photographic evidence of the murder victim. We will affirm.

---

[1] See TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (West 2011).

## Factual and Procedural History

Nineteen-year-old appellant lived in a Dallas residence with his father, mother, and two younger sisters. On May 5, 2009, appellant's mother, Esther Hernandez, disappeared without warning and could not be found despite family's and friends' efforts. Ten days later, on Mother's Day, after an undetermined foul odor had been detected in the home, appellant's father, Jose Hernandez, noticed that the odor seemed to be coming from a sealed storage closet in the hallway. As Jose undertook the task of unsealing the closet, appellant left the residence and did not return. When Jose successfully unsealed the closet, he discovered the decomposed body of Esther.

Further investigation yielded information regarding unauthorized credit cards in Jose's and Esther's names and money missing from the family bank account over which appellant had been given authority. In fact, there had been an ATM withdrawal on the morning Esther had gone missing, and, on the day before Esther's disappearance, there had been a wire transfer from the family account to appellant's account.

In mid-September 2009, appellant was found and arrested in Las Vegas, Nevada, where he was homeless. A Dallas homicide detective, Michael Mendez, interrogated appellant for approximately four and one-half hours, and appellant eventually gave a recorded, oral statement and a written statement. Appellant admitted that he had strangled his mother with a rope and put her body in the hall closet. He explained that his mother had asked him to do it to end her suffering brought about by her various medical problems.

Appellant was brought back to Texas and charged with the murder of his mother. A Dallas County jury found appellant guilty as charged and assessed life imprisonment as his punishment. On appeal from that conviction, appellant brings to this Court four issues for our review: (1) whether the trial court erred by denying his motion to suppress his oral and written statements, (2) whether the trial court abused its discretion by denying his motion for mistrial based on a juror's nondisclosure of material information, (3) whether the trial court erred when it held an *in camera* hearing on the juror's nondisclosure in appellant's absence, and (4) whether the trial court abused its discretion when it admitted over objection a gruesome photograph of the victim.

## Suppression

Appellant sought suppression of his oral and written statements. On appeal, he maintains that the statements were products of "a prolonged, coercive interrogation" and "not the product of a free and unconstrained choice." As he did below, appellant contends that he attempted to terminate the interrogation but Mendez disregarded his requests: "Despite Appellant's repeated attempts to avoid any conversation regarding the alleged murder, the detective continued to press Appellant on that issue, and Appellant ultimately succumbed to those pressures." Appellant contends that his due process rights were violated.[2]

---

[2] A statement that is "involuntary" as a matter of constitutional law is also "involuntary" under article 38.22, but the converse need not be true. Oursbourn v. State, 259 S.W.3d 159, 169 (Tex.Crim.App. 2008); see TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2005). Appellant does not raise an article 38.22 issue.

3

Standard of Review and Applicable Law

A statement is obtained in violation of constitutional due process only if the statement is causally related to coercive government misconduct. Davis v. State, 313 S.W.3d 317, 337 (Tex.Crim.App. 2010), cert. denied, 2011 U.S. LEXIS 5270 (Oct. 3, 2011). Coercive government misconduct renders a confession involuntary if the defendant's "will has been overborne and his capacity for self-determination critically impaired." Id. (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). Whether this has occurred is determined by assessing the "totality of all the surrounding circumstances," including "the characteristics of the accused and the details of the interrogation." Id.

The Due Process Clause aims at protecting suspects from police overreaching. Oursbourn, 259 S.W.3d at 170. That is, a confession may be involuntary under the Due Process Clause only when there is police overreaching. Id. at 169. Even if a confession is otherwise not the product of a meaningful choice, it is nonetheless "voluntary" within the meaning of the Due Process Clause absent some coercive police activity.[3] Id. at 169–70. Absent police misconduct causally related to the confession, there is "simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." Id. at 170 (quoting Connelly, 479 U.S. at 164).

---

[3] As the Oursbourn court observed, the United States Supreme Court made this clear when it held that if there is no police coercion or overreaching, there is no due-process violation—even if a suspect is suffering from chronic schizophrenia and is in a psychotic state following the "voice of God" at the time he confesses. See Colorado v. Connelly, 479 U.S. 157, 170–71, 107 S.Ct. 515, 93 L.Ed.2d 473 (1964). Connelly also provides a comprehensive collection of fact scenarios in which statements have been found to be involuntary under Miranda or the Due Process Clause. See id. at 163–65 & n.1.

Standing alone, a detective's misrepresentations to a "suspect during an interrogation" do not render a confession involuntary. Green v. State, 934 S.W.2d 92, 99 (Tex.Crim.App. 1996). It is "constitutionally permissible" for police to employ certain types of deception "designed to elicit a confession" as long as the suspect's will is not overborne. Id. at 99–100. Factors to consider when determining whether a defendant's will was overborne include length of detention, incommunicado or prolonged interrogation, denying access to a family member, refusing a defendant's request to telephone a lawyer or family member, and physical brutality. Pace v. State, 986 S.W.2d 740, 747 (Tex.App.—El Paso 1999, pet. ref'd). Additionally, "the fact that a friendly, supportive, low key, nonconfrontational style may prove effective in eliciting incriminating statements does not mean that the style of questioning is improper or that the resulting statements are involuntary." Lane v. State, 933 S.W.2d 504, 513 (Tex.Crim.App. 1996) (en banc). Nothing in Mendez's style of interrogation appears to run afoul of any of the foregoing principles. Though appellant can be read to criticize Mendez's style of interrogation, such does not appear to be the thrust of his contention on appeal. Instead, he asks us to examine what *appellant* said.

Appellant's contention on appeal focuses on Mendez's continued discussion following appellant's responses to questions concerning Esther's death to the effect that he was too overwhelmed to discuss it at the time. Indeed, an officer's failure to scrupulously honor a suspect's unambiguous invocation of his right to remain silent or terminate the interview may render a confession involuntary: "[F]ailure to cut off questioning after a suspect invokes his right to remain silent violates his rights and renders any subsequently obtained statements inadmissible." Dowthitt v. State, 931

5

S.W.2d 244, 257 (Tex.Crim.App. 1996). However, "an officer need not stop his questioning unless the suspect's invocation of rights is unambiguous, and the officer is not required to clarify ambiguous remarks." Id. So, the question becomes whether appellant's statements to Mendez constituted unambiguous invocations of his right to terminate the interview. Ambiguity exists when the suspect's statement is subject to more than one reasonable interpretation under the circumstances. Williams v. State, 257 S.W.3d 426, 433 (Tex.App.—Austin 2008, pet. ref'd).

In Dowthitt, the court examined a statement similar to the statements appellant made here. Dowthitt, 931 S.W.2d at 257. After Dowthitt admitted to having been present during the murders being investigated, he declared as follows: "I can't say more than that. I need to rest." Id. The Dowthitt court concluded that such statement was not an unambiguous invocation of the right to remain silent; rather, it concluded, Dowthitt's statement "merely indicates that he believed he was physically unable to continue–not that he desired to quit." Id. We see a similar statement interpreted in a similar manner in Franks v. State, 90 S.W.3d 771, 786–87 (Tex.App.—Fort Worth 2002, no pet.). In Franks, the court concluded that a suspect did not unambiguously invoke his rights when he stated, "I don't want to talk anymore. I'm tired." See id.; accord Owen v. State, 862 So. 2d 687, 696–98 (Fla. 2003) (holding appellant's statements "I don't want to talk about it" and "I'd rather not talk about it" were ambiguous in the context of police officer's specific questioning related to details of a homicide).

Some cases present clear examples of unambiguous assertions of the right to terminate the interview or to remain silent. For instance, when a suspect declared "I'm not answering any questions" and continued to invoke that right throughout the

6

remainder of the interview, he unambiguously invoked his right to remain silent. See Cooper v. State, 961 S.W.2d 222, 226–27 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd). We see an arguably more unambiguous invocation of the right to remain silent when a suspect responded immediately and emphatically, "No, man, no, no, Hell no, I'm ready to go." See State v. Simon, No. 05-10-01503-CR, 2011 Tex. App. LEXIS 9703, at *3, 6–7 (Tex.App.—Dallas Dec. 12, 2011, pet. ref'd) (not designated for publication) When, about fifteen seconds later, another officer entered the interview room, the suspect shook his head and reiterated, "I'm ready to go . . . No. I'm ready to go now. I'm telling you man. No. Hell. No." See id. at *7. The court concluded that his announcement "constituted a clear unambiguous attempt to end the interview." Id.

Others are less unambiguous. In Ramos, the suspect told the interrogating officer that "he didn't want to talk to [the officer]. That he didn't want to talk about it anymore." Ramos v. State, 245 S.W.3d 410, 413 (Tex.Crim.App. 2008). The Texas Court of Criminal Appeals held that Ramos's statement to the officer that he did not want to talk to him was an unambiguous, unequivocal, and unqualified assertion of the right to remain silent. Id. at 418–19. A reasonable police officer in the officer's position would not have found Ramos's assertion of his right to be ambiguous. Id. at 419. Further, any ambiguity in his other statement to the effect that he did not want to talk about "it" anymore, was, in context, entirely irrelevant in light of his unambiguous assertion of his right to terminate the interview. See id.

Of course, the nature of every statement is not always clear from the statement itself; we must and may consider the context in which it was uttered to determine its meaning. See Williams, 257 S.W.3d at 434 (concluding that holding in Ramos did not

7

preclude a reviewing court from examining the context in which a statement was made to determine its meaning). Notably, we consider the statement in Williams: "I want to terminate everything right now." See id. at 433. Though it could seem fairly unambiguous on its face, in its context, the officer was permitted to clarify what appellant meant by his statement, and, therefore, the trial court did not abuse its discretion when it denied Williams's motion to suppress. See id. at 433–34.

Consistently, the San Antonio court concluded that, "[i]n the context presented," a suspect's statement that he was "done talking" was not an unambiguous invocation of his right to remain silent when, immediately after the suspect said he was "done talking," he continued talking. See Esquivel v. State, No. 04-08-00730-CR, 2009 Tex. App. LEXIS 7789, at *10–11 (Tex.App.—San Antonio Oct. 7, 2009, no pet.) (mem. op., not designated for publication). Esquivel's conduct was inconsistent with his statement. Id. So, when the detective sought to clarify Esquivel's wishes before continuing the interview, he did not violate Esquivel's right to remain silent. Id. at *11. Relying on the reasoning in Williams, the Esquivel court concluded that, by continuing to talk after he stated he was "done talking," Esquivel made his statement ambiguous, unlike the suspect in Ramos who similarly stated that he no longer wished to talk and then made clear, by refusing to talk that he, in fact, no longer wished to talk. See Esquivel, 2009 Tex. App. LEXIS 7789, at *11 (discussing Ramos, 245 S.W.3d at 413, 418–19).

Analysis

Here, appellant made the following statements, each time in response to questions or prompts specifically dealing with Esther's death:

8

"Don't really want to say, it just overwhelms me right —."

"I know they want closure but just don't want to talk about it right now, when would I be, when would I be going to Texas?  Then I probably compose myself."

"I don't want to talk about it.  Like I said, I'm just overwhelmed right now."

"Could you come tomorrow, because, like I said I'm just overwhelmed right now, I don't really want to talk about it right now."

Just overwhelming, I'm shaking.  I'd love to write it down but I can't."

On their faces, these statements do not appear to be unambiguous assertions of appellant's right to remain silent or to terminate the interview.  And, taken in context, they become even less so.  That is, the fact that appellant wanted to avoid talking about the murder but continued to discuss a variety of other topics indicates that appellant simply wanted to redirect the conversation to more palatable, less "overwhelming" topics, and Mendez obliged.  The transcript of the interrogation shows that appellant was willing to and did talk with Mendez on a variety of other topics.  Although appellant expressed a reluctance to talk about the death of his mother because it seemed overwhelming to him, as the State points out, appellant was quite willing to talk about a number of other topics and never unambiguously requested to terminate the interview.  Appellant seemed especially interested in hearing how the Dallas detectives found him and asked Mendez several questions relating to the investigation.  The two also discussed cultural affairs in Dallas, appellant's high school extracurricular activities, family matters, Mendez's experiences as a police officer, television detective shows, smartphones, music, and places to go in Las Vegas.  Ultimately, it was appellant who asked for paper and pen, expressing that he was ready to give his written statement.

9

So, much like the statements examined in <u>Dowthitt</u> and <u>Franks</u>, appellant's statements are ambiguous, and they become more so in context. Though appellant expressed some reluctance to talk about the particular topic Mendez had posed, he continued to engage in discussion with Mendez about a number of other topics. So, like the statement made in <u>Williams</u>, the context lends to the ambiguity. Mendez was not required by the Due Process Clause to terminate the interview when appellant responded that the topic of his mother's death was overwhelming and that he did not want to talk about it at the time. See <u>Dowthitt</u>, 931 S.W.2d at 257. Based on the record before it, the trial court did not abuse its discretion by denying appellant's motion to suppress his oral and written statements. We overrule appellant's first issue.

Juror's Nondisclosure

The morning after trial began and after the trial court's instructions to the jury before retiring for the evening, Juror H. disclosed to the bailiff that she had read an internet news article regarding the murder prior to her having been selected as a juror and prior to the trial court's instructions not to do such research. Appellant contends that the article was prejudicial and that Juror H. failed to disclose a material fact during *voir dire*. Based on the nondisclosure of this material fact, appellant continues, the trial court should have granted his motion for mistrial.

*Voir dire* began on the morning of August 17, 2010. During lunch break, a venireperson, who ultimately would be selected to be on the jury and become Juror H., looked up appellant's name on her mobile phone and found an article relating to his

arrest. After lunch, *voir dire* resumed, during which defense counsel issued the following prompt for discussion:

> And what I need from you guys, okay, I only need from you guys for y'all to be honest with me in this small little time that we have. And if there's something out there that may make you have a problem with sitting as a juror on this case, we need to know about it. Both sides need to know about it because the last thing in the world anybody wants is for you to be chosen as a juror over here and we get halfway through the trial and that little thing that you thought you might be able to put aside, that little part of you that was, you know, you're sitting there right now saying man, that, I'm just not sure about, but I don't think. I don't think it's going to bother me. I don't think the Judge or the DA really needs to know about it or the defense attorney. I think I can get by it. We need to know about it. Okay.

On appeal, appellant maintains that Juror H. should have disclosed that she had read the article when so prompted. Ultimately, Juror H. was selected as a juror, and trial began. Just before it released the jury for the evening, the trial court issued the following instruction to the jury:

> At times throughout the trial you might hear about a particular topic, a particular location, you are not to do any kind of independent investigation of your own.
>
> I stress this. I always say you cannot get on the internet. And I take that very seriously. If you do[,] that's in contempt of Court. So I just, I have to advise you of these things because I want only the evidence you are to consider . . . to come from the Courtroom and the Courtroom only, not from any other outside sources.

The next morning, prior to presentation of any other evidence, Juror H. notified the bailiff that, prior to having been selected as a juror and prior to the trial court's admonition, she had, in fact, read an article about appellant's capture. The bailiff reported this development to the trial court who held an *in camera* hearing on the matter.

During the hearing, Juror H. testified that she read something to the effect that the "Mother's Day Killer" who had allegedly killed his mother was captured in Las Vegas.  The trial court then questioned her on the matter:

> Court: My question is to you, knowing that was in the newspaper and that you did read that, is there anything about that that is going to influence you whatsoever in your decision-making process during this trial?
>
> Juror H.: No.
>
> Court: And are you going to be able to completely set that aside and base your verdict solely on the evidence that is presented in the Courtroom?
>
> Juror H.: Yes, ma'am.

The State and the defense each questioned Juror H.  Juror H. testified that she did not discuss with any other juror the article she had read and reaffirmed that she could base her verdict solely on the evidence presented in the courtroom.  Nevertheless, defense counsel objected to the continued presence of Juror H. on the jury and requested a mistrial.  The trial court overruled appellant's objections.[4]

Standard of Review

A mistrial is an extreme remedy that is reserved for a very narrow classification of circumstances involving highly prejudicial and incurable errors.  See Ocon v. State, 284 S.W.3d 880, 884 (Tex.Crim.App. 2009).  A mistrial is used to halt proceedings when the error involved makes the expenditure of further time and expense wasteful and futile.  Id.  The decision to grant a mistrial is governed by the particular facts of the case.  Id.  A trial court's decision to deny a motion for mistrial is reviewed under an abuse of

---

[4] Though the trial court did not expressly deny the motion for mistrial, it is a fair reading of the record and the context in which the trial court overruled appellant's objections that the trial court implicitly denied the motion for mistrial as well.  See Tex. R. App. P. 33.1(a)(2)(A).

discretion standard.  Id.; Granados v. State, 85 S.W.3d 217, 236 (Tex.Crim.App. 2002).  The denial of the motion for mistrial must be upheld if it was within the zone of reasonable disagreement.  See Ocon, 284 S.W.3d at 884.

Applicable law

An accused in a criminal prosecution has the right to a fair trial by an impartial jury.  See TEX. CONST. art. I, § 10.  When a juror withholds material information during *voir dire* without fault or lack of diligence by the complaining party, the parties are denied an opportunity to exercise challenges, which hampers the selection of an impartial jury.  Franklin v. State, 12 S.W.3d 473, 477–78 (Tex.Crim.App. 2000); Armstrong v. State, 897 S.W.2d 361, 363 (Tex.Crim.App. 1995) (en banc).  Therefore, when a juror withholds material information during *voir dire*, a mistrial may be appropriate.  See Franklin v. State, 138 S.W.3d 351, 353–54 (Tex.Crim.App. 2004).

To obtain a reversal on an allegation that a juror withheld information in *voir dire*, an appellant must show that material information was "withheld" despite due diligence exercised by the complaining party, who acted in good faith on the answers given by a juror in *voir dire*.  See Franklin, 12 S.W.3d at 478; De La Rosa v. State, 658 S.W.2d 162, 164 (Tex.Crim.App. 1983); see also Brown v. State, 183 S.W.3d 728, 737 (Tex.App.—Houston [1st Dist.] 2005, pet. ref'd).  We consider information "withheld" when defense counsel asked questions in *voir dire* that were calculated to uncover material information and the juror did not reveal the information.  Jones v. State, 596 S.W.2d 134, 137 (Tex.Crim.App. [Panel Op.] 1980), overruled on other grounds by Sneed v. State, 670 S.W.2d 262, 266 (Tex.Crim.App. 1984) (en banc) (op. on reh'g).

13

Defense counsel must be diligent in eliciting pertinent information from venire members during *voir dire* in an effort to reveal prejudice or potential bias. Gonzales v. State, 3 S.W.3d 915, 917 (Tex.Crim.App. 1999) (en banc). Unless defense counsel asks such questions, the information, even if material, that a juror fails to disclose is not "withheld." Id.; Armstrong, 897 S.W.2d at 364. Further, when the information withheld is not material and the record does not show that the defendant was denied an impartial jury or a fair trial, denying a motion for mistrial is not error. Decker v. State, 717 S.W.2d 903, 907–08 (Tex.Crim.App. 1986) (en banc) (op. on reh'g); see Quinn v. State, 958 S.W.2d 395, 402 (Tex.Crim.App. 1997) (concluding that the trial court did not abuse its discretion by denying motion for new trial when juror testified that he had not discussed an outside conversation with other jurors and other jurors confirmed such).

Analysis

Appellant attempts to cast this issue in terms of the juror's failure to disclose having read the article when directly asked about such a thing when, in fact, the portion of *voir dire* on which appellant relies as the basis for his issue was much more general in nature, prompting the venire to mention "if there's something out there that may make you have a problem with sitting as a juror on this case." Further, the context of the invitation for discussion was directed at "life experiences" that would affect a juror's ability to be impartial, less to do with publicity or prior knowledge of the case. Putting the aforementioned *voir dire* excerpt in its context, this observation becomes clearer:

> . . . But all of us have life experiences. All of us have life experiences.
>
> Mine, I grew up in a small town in McAllen. Predominantly Hispanic town in the Valley on the border. I went to college. I went to Baylor

14

University, both under[]grad and law school.  Got out.  Went to work for the District Attorney[']s office.  Later on[,] I married an Assistant District Attorney who is now no longer with the District Attorney[']s office, but these were life experiences that I have.

Okay.  They're not good necessarily, they're not bad necessarily.  Some were good, some were bad, but they were what made me to be who I am.  Okay.

And what I need from you guys, okay, I only need from you guys for y'all to be honest with me in this small little time that we have.  And if there's something out there that may make you have a problem with sitting as a juror on this case, we need to know about it.  Both sides need to know about it because the last thing in the world anybody wants is for you to be chosen as a juror over here and we get halfway through the trial and that little thing that you thought you might be able to put aside, that little part of you that was, you know, you're sitting there right now saying man, that, I'm just not sure about, but I don't think.  I don't think it's going to bother me.  I don't think the Judge or the DA really needs to know about it or the defense attorney.  I think I can get by it.  We need to know about it.  Okay.

Juror H.'s failure to disclose that she had read an article on the internet in response to this particular invitation for discourse during *voir dire* is not indicative of her failure to disclose a material fact in response to a direct question; Juror H.'s forthrightness is not brought into question by her failure to disclose having read the article in response to defense counsel's cited prompt for discussion.

Further, the trial court questioned Juror H. in chambers and confirmed that she had not discussed the article with any other juror.  Juror H. also answered that she could reach her verdict based solely on the evidence presented in court.  The trial court's and the parties' inquiries were sufficient to determine that Juror H. remained unbiased.  See Granados, 85 S.W.3d at 236.  And the trial court admonished Juror H. on her responsibilities and reiterated for the record that the jury had been thoroughly admonished against outside research, noting that Juror H. had read the article prior to

15

the trial court's admonition. See id. at 237. Indeed, the trial court did issue to the jury very strict instructions to refrain from any independent research on the facts of the case, instructions which prompted Juror H. to disclose that she had done so prior to having been so instructed. Her candor with respect to having read the article prior to having been instructed suggests that Juror H. understood and complied with the trial court's instructions after she was selected as a juror. Cf. id. (noting that there was no indication that the juror disobeyed the trial court's instructions regarding his responsibilities). With that, the record does not reflect that appellant was denied an impartial jury or a fair trial. See Decker, 717 S.W.2d at 907–08. The trial court did not abuse its discretion by denying appellant's motion for mistrial made on the basis of Juror H.'s revelation. See Granados, 85 S.W.3d at 237. We overrule appellant's second point of error.

*In Camera* Hearing in Appellant's Absence

When Juror H. revealed that she had read the news article on the murder, the trial court held an *in camera* hearing on the matter in appellant's absence. Appellant contends that, by holding this hearing in chambers in his absence, the trial court committed reversible error. He addresses the issue in terms of both statutory and constitutional error. He cites his right to be present as guaranteed by the United States and Texas Constitutions and as codified by the Texas Code of Criminal Procedure.

Constitutional Right to Be Present

A criminal defendant has a constitutional right to be present at all phases of his trial where his absence might frustrate the fairness of the proceeding. See U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; Faretta v. California, 422 U.S. 806, 820 n.15, 95

16

S.Ct. 2525, 45 L.Ed.2d 562 (1975); see also Miller v. State, 692 S.W.2d 88, 90 (Tex.Crim.App. 1985) (en banc). The Texas Court of Criminal Appeals has adopted the reasonably substantial relationship test to satisfy the Fourteenth Amendment and Sixth Amendment concerns. See Routier v. State, 112 S.W.3d 554, 576 (Tex.Crim.App. 2003). That is, the defendant's presence must bear a reasonably substantial relationship to the opportunity to defend. See id.; Adanandus v. State, 866 S.W.2d 210, 219 (Tex.Crim.App. 1993). However, "an accused who is present at the time *voir dire* begins, but who thereafter voluntarily removes himself for any length of time forfeits his Sixth Amendment right to be present for that period of time during which he was absent." Miller, 692 S.W.2d at 91.

Nonetheless, even constitutional error may be forfeited by the failure to object: "Except for complaints involving systemic (or absolute) requirements, or rights that are waivable only, which are not involved here, all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." Mendez v. State, 138 S.W.3d 334, 342 (Tex.Crim.App. 2004) (en banc). More concisely, "if a party fails to properly object to constitutional errors at trial, these errors can be forfeited." Clark v. State, 365 S.W.3d 333, 339 (Tex.Crim.App. 2012). And, more specifically, a defendant waives his constitutional right to confront witnesses if he does not make a timely and specific objection at trial on the basis of violation of his right to confrontation. See Holland v. State, 802 S.W.2d 696, 700 (Tex.Crim.App. 1991) (en banc); cf. McNaspy v. State, No. 14-96-01317-CR, 1999 Tex. App. LEXIS 5594, at *2–4 (Tex.App.—Houston [14th Dist.] July 29, 1999, pet. ref'd) (concluding that appellant failed to preserve his federal and state constitutional complaints when "the record [did]

not reflect that appellant objected on any grounds to his exclusion from the trial court's *in camera* hearing").  Here, appellant lodged no objection to his absence from the *in camera* hearing.  His failure to object has forfeited his constitutional complaints on appeal.  See Clark, 365 S.W.3d at 339.

Article 33.03

Nothing, then, in terms of constitutional rights, was preserved for our review.  We are, therefore, left with the issue of appellant's absence from the *in camera* hearing raised in terms of article 33.03, which generally affords greater protection than federal and state constitutional provisions in terms of waiver of the right to be present and which requires essentially the same substantive analysis.[5]  See Roden v. State, 338 S.W.3d 626, 631 n.1 (Tex.App.—Fort Worth 2011, pet. ref'd) (addressing only statutory complaint even though appellant also raised federal and state constitutional issue because article 33.03 arguably offers greater protection of rights and also acknowledging that the analysis is largely the same).  Keeping in mind the exception

---

[5] Notably, the Dallas Court of Appeals, from which this case was transferred to this Court pursuant to the Texas Supreme Court's docket equalization efforts, has observed that article 33.03 provides even greater protection than the constitutional provisions. See Sumrell v. State, 326 S.W.3d 621, 624 n.2 (Tex.App.—Dallas 2009) (noting that federal constitutional right "is codified under state law in article 33.03 of the Texas Code of Criminal Procedure, which is even more protective of a defendant's rights than the constitutional provisions because the right to be present cannot be waived before the jury is selected"), pet. dism'd, improvidently granted, 320 S.W.3d 338 (Tex.Crim.App. 2010) (per curiam).  Not having directly spoken on this particular issue, we will proceed, taking guidance from Sumrell.  See TEX. R. APP. P. 41.3.

that regular rules regarding preservation of error do not apply to rights that are "waivable only," we turn to article 33.03. See Mendez, 138 S.W.3d at 342.[6]

Article 33.03 provides as follows:

> In all prosecutions for felonies, the defendant must be personally present at the trial, and he must likewise be present in all cases of misdemeanor when the punishment or any part thereof is imprisonment in jail; provided, however, that in all cases, when the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion. When the record in the appellate court shows that the defendant was present at the commencement, or any portion of the trial, it shall be presumed in the absence of all evidence in the record to the contrary that he was present during the whole trial. Provided, however, that the presence of the defendant shall not be required at the hearing on the motion for new trial in any misdemeanor case.

TEX. CODE CRIM. PROC. ANN. art. 33.03 (West 2006). By its own terms, article 33.03 distinguishes between the right to be present at *voir dire* and the right to be present after a jury has been selected.

So, under article 33.03, an accused's right to be present at his trial is unwaivable until such a time as a jury "has been selected." Id.; Adanandus, 866 S.W.2d at 217; Miller, 692 S.W.2d at 91. After a jury has been selected, a defendant may choose to be absent. See TEX. CODE CRIM. PROC. ANN. art. 33.03; Routier, 112 S.W.3d at 575. So,

---

[6] The Texas Court of Criminal Appeals has intimated that an appellant's post-jury-selection rights under article 33.03 may be forfeited by a failure to object at the earliest opportunity. See Routier, 112 S.W.3d at 575 (addressing appellant's complaint that she was absent during trial court's response to the jury's request); see also Lacy v. State, 374 S.W.2d 244, 245 (Tex.Crim.App. 1963) (denying appellant's contention that trial court erred by holding hearing on motion for new trial in his absence when trial counsel was present, announced ready, and made no objection to appellant's absence from hearing). However, because a great deal of authority suggests that article 33.03 rights, after a jury has been impaneled, are waivable only and because the Routier court ultimately did address the merits of appellant's claims despite her failure to object, we, too, will address the substance of appellant's article 33.03 claims.

19

the right outlined in article 33.03 is one that must be implemented unless appellant waives that right. See Kessel v. State, 161 S.W.3d 40, 45 n.1 (Tex.App.—Houston [14th Dist.] 2004, pet. ref'd) (citing Garcia v. State, 149 S.W.3d 135, 142–45 (Tex.Crim.App. 2004)). One way a defendant may waive the right afforded by article 33.03 is by voluntarily absenting himself from trial after a jury has been selected. See Miller, 692 S.W.2d at 91. Our concern here is that there is nothing in the record regarding any finding by the trial court with regard to the voluntariness of appellant's absence from the *in camera* hearing.[7] We note further that trial counsel made no affirmative waiver of appellant's presence on the record, which, in proper circumstances, could be sufficient to waive appellant's article 33.03 rights. See Routier, 112 S.W.3d at 576. The trial court announced the presence of the State's attorney, defense counsel, and Juror H. in chambers; no mention was made of appellant. In cases involving the waiver of waivable only rights, the fact that appellant was inexplicably absent, without a waiver by counsel or a finding from the trial court, seems insufficient to conclude that appellant waived his article 33.03 right:

> Waivable rights, on the other hand, do not vanish so easily. Although a litigant might give them up and, indeed, has a right to do so, he is never deemed to have done so in fact unless he says so plainly, freely, and intelligently, sometimes in writing and always on the record. He need make no request at trial for the implementation of such rights, as the judge has an independent duty to implement them absent an effective waiver by

---

[7] We recognize that the trial court need not conduct a full-blown evidentiary hearing on the voluntariness issue. Aguirre v. State, 695 S.W.2d 793, 795 (Tex.App.—San Antonio 1985, no writ). Evidence supporting a conclusion that the defendant's absence was voluntary may include that he was present at the trial before his absence, he was instructed when and where trial would resume, he was out on bond when he disappeared, and he subsequently offered no explanation for his absence in a motion for new trial or otherwise. See Moore v. State, 670 S.W.2d 259, 261 (Tex.Crim.App. 1984) (en banc). Again, however, we have no finding or conclusion on the voluntariness of appellant's absence.

him. As a consequence, failure of the judge to implement them at trial is an error which might be urged on appeal whether or not it was first urged in the trial court.

Marin v. State, 851 S.W.2d 275, 280 (Tex. Crim. App. 1993) (en banc) (citation omitted).

No Reasonably Substantial Relationship

Appellant maintains that his presence at the hearing bore a reasonably substantial relationship to his opportunity to defend himself because, had he been present, he could have listened to Juror H.'s answers and observed her demeanor. Those observations could have enabled him to consult with defense counsel regarding additional questions to ask Juror H. In his brief, he explains that his absence from the hearing meant "he was unable to assist his attorney in moving for the mistrial."

The Texas Court of Criminal Appeals concluded that appellant's presence at an *in camera* hearing on a jury issue did not bear a reasonably substantial relationship to his ability to defend himself when appellant was represented by counsel at the hearing, appellant's insight was not required, and there was no evidence that appellant had information not available to the attorneys and the trial court.[8] See Adanandus, 866

---

[8] We note that there is also authority that could be said to support the conclusion that neither article 33.03 nor the relevant constitutional provisions would be implicated with respect to the *in camera* hearing at which appellant directs his complaint. For instance, *in camera* proceedings to discuss (1) the "peculiar situation" in which a potential juror was contacted via telephone at home by someone from the jail where defendant was incarcerated and (2) whether the venireperson should be dismissed did not constitute *voir dire* proceedings, and defendant's exclusion did not implicate defendant's constitutional right to be present during trial. See Lawton v. State, 913 S.W.2d 542, 549 (Tex.Crim.App. 1995) (en banc), overruled on other grounds by Mosley v. State, 983 S.W.2d 249, 263–64 & n.18 (Tex.Crim.App. 1998) (op. on reh'g); see also Ingram v. State, No. 05-99-00442-CR, 2000 Tex. App. LEXIS 4715, at *7–8 (Tex.App.—Dallas July 18, 2000, pet. ref'd) (concluding that the *in camera* meeting to discuss alleged juror misconduct was not a "trial" for the purposes of article 33.03). We will presume, for the

21

S.W.2d at 220. The Dallas court came to similar conclusions when asked to review issues relating to an appellant's absence from an *in camera* hearing on alleged juror misconduct. See Ingram, 2000 Tex. App. LEXIS 4715, at *8. The court observed that appellant would have lacked any knowledge on the issue of juror misconduct. Id. In fact, the court could "perceive no manner in which appellant's presence [at the *in camera* hearing] would have aided in his defense." Id. Similarly, in addressing both the reasonably substantial relationship issue and the question of harm,[9] the Dallas court pointed out that the record revealed nothing to suggest an appellant's presence at a pretrial motion for continuance would have changed the legal arguments presented there. Williams v. State, No. 05-09-01060-CR, 2011 Tex. App. LEXIS 3799, at *14 (Tex.App.—Dallas May 19, 2011, pet. ref'd) (not designated for publication). Nor was there "any indication his presence would have furthered his defense at trial." Id.

---

purposes of analysis and out of an abundance of caution, that the *in camera* hearing at issue here is sufficiently distinguishable from the *in camera* hearing at issue in Lawton.

[9]Though the Texas Court of Criminal Appeals has expressly recognized that the reasonably substantial relationship test and harm analysis are technically separate inquiries, they do have similar considerations:

> The reasonably substantial relationship test is essentially a harm analysis, although it differs from [former] Rule 81(b)(2). . . . The reasonably substantial relationship test seeks to determine the effect of the defendant's absence on the advancement of his defense, as opposed to [former] Rule 81(b)(2) which seeks to determine the effect of the defendant's absence on the outcome of the trial or punishment proceeding. In light of the distinct focus of the two tests, we hold that [former] Rule 81(b)(2) does not supplant the reasonably substantial relationship test, but rather should be applied in addition thereto.

Adanandus, 866 S.W.2d at 219–20.

Likewise, here, the trial court held the *in camera* hearing to determine issues related to possible juror misconduct. While there were some factual issues raised, we cannot see how appellant could have contributed any unique insight into these matters. As for the legal issues relating to juror misconduct, we cannot conclude that, had he been present, appellant would have been able to contribute anything in terms of strategic decisions relating to the motion for mistrial. On matters such as these, we reiterate the Texas Court of Criminal Appeals's observation: "It is difficult to imagine a trial fraught with complex legal problems when there will not be occasions where counsel and the court will confer on questions of law at the bench or in chambers out of the presence of the defendant." Mares v. State, 571 S.W.2d 303, 307 (Tex.Crim.App. [Panel Op.] 1978). Appellant has failed to demonstrate that his presence at the *in camera* hearing bore a "reasonably substantial relationship to the opportunity to defend." See id. We overrule appellant's third issue.[10]

## Admission of Photographic Evidence

In his fourth and final point of error, appellant contends the trial court abused its discretion by admitting what he characterizes as "a highly prejudicial, gruesome photograph" showing the partially decomposed, bloated, disfigured head of Esther, after

---

[10] Even if we were to presume for the purposes of analysis that defendant's absence from the *in camera* hearing violated his rights under article 33.03, we conclude that such error did not affect a substantial right. See TEX. R. APP. P. 44.2(b). For reasons not dissimilar to those supporting our conclusion that appellant's presence at the hearing did not bear a reasonably substantial relationship to his ability to defend himself, we conclude that any error would be harmless. That is, appellant was represented by counsel, his insight was not necessary to the disposition of the issues raised in the hearing, and there was no evidence that appellant had relevant information not available to the attorneys or the trial court on the matters addressed. See Adanandus, 866 S.W.2d at 220; see also Muennink v. State, 933 S.W.2d 677, 683–84 (Tex.App.— San Antonio 1996, pet. ref'd).

her body was discovered in the closet. Appellant maintains that the prejudicial impact of this photograph substantially outweighs its probative value. See TEX. R. EVID. 403.

Standard of Review and Applicable Law

The admissibility of photographic evidence lies within the sound discretion of the trial court. Shuffield v. State, 189 S.W.3d 782, 786 (Tex.Crim.App. 2006). Its decision to admit or exclude evidence will not be overturned on appeal absent a showing that the trial court abused its discretion. Id. at 787. The Texas Rules of Evidence favor admission of all relevant evidence at trial, though these evidentiary rules do provide exceptions that would exclude otherwise relevant and admissible evidence. See TEX. R. EVID. 401. One exception to this general rule is found in Rule 403: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. When called on to analyze evidence in light of a Rule 403 objection, the trial court must balance the following considerations: (1) the inherent probative force of the proffered evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Gigliobianco v. State, 210 S.W.3d 637, 641–42 (Tex.Crim.App. 2006). When dealing specifically with photographic evidence, we also consider the

number and size of the photographs, whether they are in color or black and white, the detail shown in the photographs, whether the photographs are gruesome, whether the body is naked or clothed, and whether the body has been altered in some way that might enhance the gruesomeness of the photographs to the appellant's detriment. Shuffield, 189 S.W.3d at 787.

Analysis

State's Exhibit 47 consists of one photograph depicting Esther's body as it appeared following its removal from the hall closet. In the record before us, this photograph appears to be approximately six inches by eight and one-half inches; its degree of detail is unremarkable, no more or less than expected from a copy of the original. Though the photograph appears in our record as a black and white copy, the discussion at trial surrounding its contents as depicting a green cord suggest that the original exhibit was a color photograph. See id. (presuming at-issue photographs were submitted in color though they appeared in black and white in appellate record). Nothing in the record suggests that the body was positioned or altered before this photograph was taken so as to enhance its gruesomeness.

The State cites the photograph's depiction of the rope around the deceased's hands and looped around her neck as being consistent with rope found in a drawer in appellant's bedroom. Appellant maintains that there was other compelling and undisputed evidence in support of that fact; therefore, he contends, the probative value of the evidence and the State's need for it was low. In response to appellant's contention that the photograph's probative value is diminished by the admitted

25

testimonial evidence that he claims would serve to prove the same fact depicted in the photograph, we note that the Texas Court of Criminal Appeals has rejected this position:

> We reject the premise that visual evidence accompanying oral testimony is cumulative of the testimony or that it is of insignificant probative value. Visual evidence accompanying testimony is most persuasive and often gives the fact finder a point of comparison against which to test the credibility of a witness and the validity of his conclusions. Nor do we agree with appellant's assertion that the photographs are inflammatory. The photographs are gruesome in that they depict disagreeable realities, but they depict nothing more than the reality of the brutal crime committed. And it is precisely because they depict the reality of this offense that they are powerful visual evidence, probative of various aspects of the State's case.

Chamberlain v. State, 998 S.W.2d 230, 237 (Tex.Crim.App. 1999) (en banc). On such authority, we conclude the photograph's probative value weighs in favor of admission.

To support his position that the exhibit possesses the potential to impress the jury in some irrational but indelible way, appellant cites the fact that the photograph depicts Esther's corpse in an advanced state of decomposition and presents a graphic, close-up view of her bloated face. The photograph, while grotesque in nature, is no more gruesome than the crime scene itself as it was found by the police. See Shuffield, 189 S.W.3d at 787. Again, simply because the photograph depicted the "disagreeable realities" of the crime, does not render it inadmissible: "[W]hen the power of the visible evidence emanates from nothing more than what the defendant has himself done[,] we cannot hold that the trial court has abused its discretion merely because it admitted the evidence." Sonnier v. State, 913 S.W.2d 511, 519 (Tex.Crim.App. 1995) (en banc).

According to the record before us, less than one page of the reporter's record was devoted to developing the predicate and discussing the contents of Exhibit 47

before publishing it to the jury. In light of the entirety of the record, as appellant has conceded, rather little time was needed to develop the evidence.

State's Exhibit 47 is probative of the injuries sustained by the victim. The single photograph did not require a great deal of time to present to the jury and, though gruesome, depicts no more than the unpleasant, natural consequences of appellant's crime. It is no more gruesome than would be expected. See Shuffield, 189 S.W.3d at 788. Based on our analysis of the applicable law and facts, we cannot say the trial court abused its discretion when it overruled appellant's Rule 403 objection to the admission of the photograph. Accordingly, we overrule appellant's fourth and final point of error.

### Conclusion

Having overruled appellant's points of error, we affirm the trial court's judgment of conviction.

Mackey K. Hancock
Justice

Do not publish.